SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### State of New Jersey v. Kelvin Williams (A-8-12) (071306)

**[Note: This is a companion case to State v. Christopher Dekowski, also filed today.]**

**Argued October 8, 2013 -- Decided August 11, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court determines whether a defendant's demand of money from a bank employee while telling her he was armed with a bomb, in the absence of any gesture suggesting the truth of his menacing remark, constituted sufficient evidence of an immediate threat to use a deadly weapon in order to sustain a conviction for first-degree robbery.

On the morning of October 8, 2008, defendant Kelvin Williams, wearing bright orange pants, an oversized white t-shirt, and a camouflage hooded sweatshirt with the hood pulled over his head, entered the Sun National Bank in Somerdale, New Jersey. Defendant leaned on the teller counter and told head bank teller Cheryl Duncan "that he had a bomb and to give him seven million dollars." Duncan did not see a bomb but testified that defendant was wearing a big hooded sweatshirt and his body and hands were not visible. Although Duncan initially did not believe that defendant had a bomb, she ultimately reconsidered, thinking he might be "crazy enough" to blow himself up. Refusing to take any chances, she handed defendant $552 from her teller's drawer. Defendant left the bank and got in a cab, and Duncan called 9-1-1. Defendant was arrested at a nearby mall, and Duncan identified him as the robber. No evidence was recovered suggesting defendant was armed with a bomb.

At trial, defendant moved for a judgment of acquittal on the first-degree robbery charge, arguing that, where a robber is not actually armed with a weapon, the State must show a threat and demand for money, as well as an accompanying gesture giving the impression of a weapon. Defendant submitted that only uttering the words, "I have a bomb" and "Give me the money" was insufficient to support a finding of guilt on the first-degree robbery charge. The court denied defendant's motion, finding that the totality of the circumstances, including defendant's words, behavior, and dress, were sufficient to allow the jury to find defendant guilty of armed robbery beyond a reasonable doubt. The jury convicted defendant of first-degree robbery, and the court sentenced him to a fourteen-year prison term subject to an eight-five percent parole ineligibility period and a five-year period of parole supervision.

Defendant appealed, and the Appellate Division held that, even giving the State the benefit of all favorable inferences, there was insufficient evidence for the jury to find that Duncan had a reasonable belief that defendant was armed with a bomb during the robbery. The panel determined that case law involving simulation of a "deadly weapon" requires either an object that clearly simulates a weapon or a combination of words and gestures giving the impression that the defendant is armed. The panel emphasized that defendant made no gesture indicating possession of a bomb or his intent to detonate one. Referring to defendant's dress, the panel concluded that, absent a statement that the bomb was concealed on his body, defendant's clothing was of little relevance. The panel determined that Duncan's belief that defendant had a bomb was unreasonable under the circumstances, bearing no reference to his conduct, clothing or demeanor. Accordingly, the panel reversed defendant's conviction, declining to address an evidentiary issue raised on appeal. The Court granted the State's petition for certification. 212 N.J. 199 (2012).

**HELD:** To find a defendant guilty of first-degree robbery in a simulated deadly-weapon case, the victim must have an actual and reasonable belief that the defendant threatened the immediate use of such a weapon, which factfinders must ascertain through application of a totality-of-the-circumstances standard, which includes consideration of the nature of any verbal threat, the defendant's conduct, his dress, and any other relevant factors. Applying that standard here, defendant's words, conduct, and clothing provided sufficient evidence for a reasonable jury to convict defendant of first-degree robbery.

1. Appellate courts review statutory interpretations de novo, owing no deference to the lower court's interpretation. The primary goal of statutory interpretation is to identify the Legislature's intent. In order to do so, courts first look to the plain language of the statute, only resorting to extrinsic aids, such as legislative history, if the plain language yields more than one possible interpretation. Ambiguities are resolved in favor of the defendant. (pp. 11-13)

2. Under N.J.S.A. 2C:15-1(b), second-degree robbery is elevated to a first-degree crime if the defendant "is armed with, or uses or threatens the immediate use of a deadly weapon." The definition of "deadly weapon" includes any "material or substance" that "in the manner [in which] it is fashioned would lead the victim to reasonably believe it to be capable of producing death or serious bodily injury." N.J.S.A. 2C:11-1(c). This definition allows for a first-degree robbery conviction even where the defendant only has a simulated weapon, although such a conviction will not be sustained unless, under the circumstances, the victim possessed a reasonable and subjective belief that the device was capable of producing death or serious bodily injury. (pp. 13-15)

3. Since a robber pretending to possess a deadly weapon intends for the victim to believe that it is real, a robber pretending to conceal a bomb on his body will fashion his appearance to bolster this impression. In order to determine whether a robber has fashioned an object or substance for the purpose of giving the impression he is armed with a deadly weapon, courts look to the totality of the circumstances. In simulated-weapon robbery cases, the Court has held that first-degree robbery convictions may be based on the use of a body part or gestures, coupled with threatening words, simulating possession of a weapon. Where an object is fashioned to appear as a concealed gun or knife, it is understandable that a robber would make a gesture to indicate that he is armed to underscore the credibility of his threat. However, such a gesture may not be necessary to reasonably persuade a victim that a robbery's body is outfitted as a bomb or that a bomb is secreted in the robber's apparel. Since bombs are known to have the capacity to cause mass carnage and destruction, a victim threatened with detonation of a bomb is unlikely to ask for proof of its existence. Accordingly, a robber who claims he is armed with a bomb and is outfitted in loose clothing that may conceal an explosive device should expect he will be taken at his word. (pp. 15-21)

4. While a threat or reference to a deadly weapon alone is insufficient to satisfy N.J.S.A. 2C:11-1(c), the words that convey the threat, the robber's overall conduct, his dress, and any other relevant factors may combine to create an actual and reasonable belief that the robber was armed with a deadly weapon. Consequently, the clothing that a defendant is wearing at the time of a robbery, as well as the placement or concealment of his hands, is highly relevant in assessing the credibility of the threat. In the context of simulated weapons, the victim must have an actual and reasonable belief that the robber may be armed with a deadly weapon. (pp. 21-23)

5. Here, the Court reviews the sufficiency of the evidence on defendant's acquittal motion de novo, determining whether, based on the entirety of the evidence and after giving the State the benefit of all favorable inferences, a reasonable jury could find defendant guilty beyond a reasonable doubt. Defendant threatened that he had a bomb, was wearing loose clothing, including a hooded sweatshirt with the hood pulled over his head, and his hands, feet and torso were not visible. Although the teller could not have known for certain whether defendant was armed with a bomb, the threat was unequivocal. No useless gesture was required to give defendant's threat of a deadly weapon further credence. There have been well-publicized recent instances of individuals concealing bombs under their clothes, in shoes, and in headgear, including one bank robbery case where the robber attached a bomb to his neck and torso. Thus, giving all favorable inferences to the State, the teller would not have parted with the bank's money had she not believed the threat was real. In light of the totality of the circumstances, including defendant's words, conduct, and clothing, as well as contemporary knowledge that bombs have been concealed on persons, a rational jury could have found that defendant "fashioned" himself in a way that led the teller to reasonably believe that he possessed a bomb that was capable of producing serious bodily injury or death. Accordingly, the Court reverses the Appellate Division's judgment of acquittal and reinstates defendant's conviction of first-degree robbery, remanding the case to the Appellate Division for consideration of the evidentiary issue that was not previously decided. (pp. 23-26)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Appellate Division for further proceedings in accordance with the Court's opinion.

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

KELVIN WILLIAMS,

    Defendant-Respondent.


        Argued October 8, 2013 – Decided August 11, 2014

        On certification to the Superior Court,
        Appellate Division.

        Jason Magid, Assistant Prosecutor, argued
        the cause for appellant (Warren W. Faulk,
        Camden County Prosecutor, attorney).

        Michael B. Jones, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).

        Kenneth A. Burden, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    A jury convicted defendant, Kelvin Williams, of first-degree robbery based on evidence that he entered a bank, told a teller he possessed a bomb, and demanded money. Defendant made no gesture as he issued his threat, and a bomb was not displayed. Defendant was dressed in a hooded sweatshirt and

pants, and his hands were not visible.  It is undisputed that defendant was not armed with a bomb.

Second-degree robbery is elevated to a first-degree crime when the robber threatens the immediate use of a deadly weapon. N.J.S.A. 2C:15-1(b).  This element of robbery does not require that the robber actually be armed with a deadly weapon, but only that he possess any "material or substance . . . which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury."  N.J.S.A. 2C:11-1(c).

The issue in this appeal is whether defendant's demand of money from the bank employee while telling her he was armed with a bomb, in the absence of any gesture suggesting the truth of his menacing remark, constituted sufficient evidence of an immediate threat to use a deadly weapon.  The Appellate Division concluded that the failure of defendant to make some gesture suggesting he was armed with a bomb did not allow a finding that defendant threatened the immediate use of a deadly weapon.  The appellate panel therefore overturned the jury verdict.

We disagree with the Appellate Division.  Well-documented events since 2001 have made the public painfully aware that bombs can be secreted in cunning ways -- under a person's garments, in a shoe, or in luggage -- and can be exploded by various means, including by timers and remote devices.  A

2

defendant who makes a credible threat that he is armed with a bomb may be taken at his word for purposes of first-degree robbery. So long as the victim had an actual and reasonable belief that a defendant was armed with a bomb based on the totality of the circumstances, including the defendant's words, conduct, and dress, a gesture is not a prerequisite for a finding that defendant threatened the immediate use of a deadly weapon.

We therefore reverse and reinstate defendant's conviction of first-degree robbery, and remand to the Appellate Division for consideration of the remaining issue not addressed in defendant's appeal.

I.

A.

Defendant, Kelvin Williams, was tried by a jury and convicted of first-degree armed robbery, N.J.S.A. 2C:15-1. The evidence presented at trial and relevant to this appeal follows.

On the morning of October 8, 2008, defendant walked into the Sun National Bank in the Borough of Somerdale in Camden County. According to the testimony of head bank teller Cheryl Duncan, defendant stood six-feet tall and was wearing bright orange pants and an oversized white t-shirt underneath a

3

camouflage hooded sweatshirt.  As he approached her teller window, defendant's hood was "pulled over his head."

Once there, defendant leaned his body on the teller counter and told Duncan "that he had a bomb and to give him seven million dollars."  When Duncan was asked by the prosecutor whether she saw a bomb, she responded, "No.  But, he had a big hooded sweatshirt on."  Duncan could see defendant's face underneath the hood but his body and hands were not in view. Duncan was frightened and backed up behind her protective glass window.  Duncan knew that the bank's customer service representative, Aline Keshishian, who was eight months pregnant and seated at a desk in the lobby, was just a few feet from defendant.  Duncan thought that defendant could grab Keshishian and order Duncan to admit him into the teller station. According to Keshishian, defendant's hands were in the pockets of his baggy sweatshirt as he walked toward the teller window, an observation corroborated by a surveillance video introduced into evidence.

At first, Duncan did not believe that defendant had a bomb, thinking, "it's silly for someone to blow themselves up for money."  But she also supposed that defendant might be "crazy enough to do something like that" and thus considered "there [was] a very good possibility that [he had] a bomb."  Duncan did not see a bomb, but she "didn't know he didn't have a bomb."

4

And although Duncan also stated that she "didn't believe that he had a bomb," she did not take any chances, handing defendant $552 from her teller's drawer. She did not use the bank's dye pack with marked bills because she was "scared."

After defendant took the money, he left the bank and got in a cab. Duncan sounded the bank's silent alarm and called 9-1-1, relaying information about the robbery. She told the 9-1-1 operator, "I didn't believe him, but I gave him the money."

Within minutes of the 9-1-1 call, officers of the Somerdale Police Department responded to the bank. Patrolman Kevin Smith testified that, on his arrival, he spoke with Duncan. She reported that a man -- later identified as defendant -- entered the bank and approached her teller window, threatening, "I have a bomb strapped to me" or "I have a bomb strapped to my chest," and demanding "nine million dollars."

A description of the robber, his clothes, and the getaway vehicle was broadcast. Defendant was tracked to a nearby mall, where he was arrested. At the time of his arrest, defendant was "carrying in his hand a camouflaged hooded sweatshirt" and "wearing jeans, a white and blue striped collared shirt, [and] a baseball hat." The police took from defendant a receipt indicating that he had purchased for $60.98 in cash jeans and a striped shirt from the mall's Pay Half store and $481 in various denominations. The aggregate of the mall purchase and cash

5

found on defendant closely matched the amount stolen from the bank. In addition, from a trash can inside the Pay Half store, the police recovered bright orange pants and a white t-shirt.

The police transported defendant to the bank where Duncan identified him as the robber. No evidence, however, was gathered suggesting that defendant was actually armed with a bomb.

B.

After both the State and defense rested, defendant moved for a judgment of acquittal on the first-degree portion of the robbery charge. Defendant argued that in a case in which a robber is not actually armed with a weapon, the State must show, in addition to a "threat and demand for money," that there was "an accompanying gesture" that gave the impression that he possessed a weapon. Defendant submitted that the evidence was insufficient for a finding of guilt on the first-degree charge because he only uttered words, "I have a bomb" and "Give me the money."

The trial court denied defendant's acquittal motion. In doing so, the trial court looked at the totality of the circumstances, including defendant's words, behavior, and the manner of his dress. The court concluded that "in these days of bombs strapped tightly to chests, bombs as part of a person's

6

clothing . . . a jury could find that [defendant] is guilty of armed robbery beyond a reasonable doubt."

C.

The jury rejected defendant's defense of misidentification and found defendant guilty of first-degree robbery.  Defendant was sentenced to a fourteen-year prison term subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.  The court also imposed a five-year period of parole supervision and the requisite fines and penalties.

Defendant appealed.

II.

In an unpublished decision, the Appellate Division held that, even giving the State the benefit of all favorable inferences, there was insufficient evidence for a jury finding that the bank teller had "a reasonable belief that defendant was armed with a bomb during the commission of the robbery." Accordingly, the appellate panel reversed defendant's conviction for first-degree robbery.

The panel framed two questions, one general, "what conduct is required to accompany words when the defendant explicitly references a bomb," and one specific, "whether defendant's clothing and comportment and the nature of his threat provided a

7

sufficient basis upon which to convict him of armed robbery by simulation." The panel construed the decisional law involving simulation of a "deadly weapon" under N.J.S.A. 2C:11-1(c) as requiring "either an object that clearly simulates a weapon or a combination of words and gestures" that give the impression that a perpetrator is armed with a weapon. The panel refused to distinguish robberies involving a simulated bomb from those involving other simulated weapons, reasoning that "to hold that a bomb threat unaccompanied by a gesture is sufficient to establish robbery by simulation would be to eviscerate the case law requiring that a threat to use a deadly weapon be accompanied by conduct indicative of the existence of the weapon."

In the present case, the panel emphasized that defendant made no gesture indicating that he had a bomb or was ready to detonate one. In the panel's view, even the manner of defendant's dress provided no clue whether defendant was armed with a bomb: "if he did not say that the bomb was on his body, the fact that defendant was wearing a hooded sweatshirt has little relevance." Although the panel accepted "as credible Duncan's testimony that she came to believe that defendant had a bomb," it nevertheless concluded that her belief was unreasonable because it "bore no reference to the conduct, clothing or demeanor of defendant."

8

Because the panel reversed defendant's conviction, it declined to address an evidentiary issue raised on appeal.[1]

We granted the State's petition for certification. State v. Williams, 212 N.J. 199 (2012). We also granted the Attorney General's motion for leave to appear as amicus curiae.

### III.

### A.

The State argues that the Appellate Division misapplied the standard governing a motion for a judgment of acquittal by "conjuring" negative inferences to support its conclusion that a reasonable person would not have believed that defendant was armed with a bomb. The State also contends that the Appellate Division went astray by treating simulated robbery cases involving guns like those involving bombs. It maintains that the panel failed to acknowledge that gestures typically suggesting possession of a gun are meaningless in simulated bomb cases because explosive devices can be "hidden in the sole of a shoe or secreted in an undergarment." The State submits that "the nature of the action and/or gesture necessary to elevate a robbery to a first-degree crime must be defined by the type of

---

[1] Defendant argued before the Appellate Division that the trial court erred by allowing the "admission into evidence of bright orange pants that bore the initials of the Camden County Correctional Facility (CCCF)."

deadly weapon threatened" and that here defendant's physical and verbal actions "created the reasonable impression that he possessed a bomb."[2]

B.

The Attorney General, as amicus curiae, submits that this Court's interpretation of the robbery statute requires a totality-of-the-circumstances approach, including a consideration of the distinct characteristics of the weapon at issue, in determining whether sufficient evidence was presented for the jury to find that the teller reasonably believed defendant was armed with a bomb. The Attorney General insists that "defendant's unambiguous verbal threat rendered a specific gesture superfluous," "that no standard gesture adequately conveys the presence of a concealed bomb," and that defendant did not have to pat his chest to confirm a bomb was strapped to his body. The Attorney General maintains that defendant's "unambiguous threat of a bomb," his manner of dress, and the inability of the teller to see his body when he made his demands allowed the jury to conclude that defendant "create[d] a reasonable impression that he was armed with a bomb."

C.

---

[2] The State also claims that the Appellate Division, even if correct, should have remanded for the entry of a judgment of conviction for second-degree robbery because any error in submitting the deadly weapon issue to the jury only effected the elevation of second-degree robbery to a first-degree crime.

10

Defendant urges this Court not to "expand the law of armed robbery by simulation by dispensing with anything more than a verbal threat to make out the crime." Defendant submits that this Court has never wavered from the principle that some gesture must accompany the threat to use a deadly weapon for a conviction of first-degree robbery in a simulated-weapon case, citing State v. Chapland, 187 N.J. 275, 292 (2006), and State v. Hutson, 107 N.J. 222, 226-28 (1987). Defendant contends that he did not fashion an object "to create an ominous impression" and that his wearing "a large sweatshirt may have created the possibility that he had a bomb" but not a reasonable impression that he, in fact, possessed a bomb. Last, defendant asks that this Court not push "the boundaries of the [robbery] statute" beyond the clear intent of the Legislature and apply "the 'fundamental canon of statutory interpretation -- that courts are bound to strictly construe penal statutes,'" quoting State v. Froland, 193 N.J. 186, 201 (2007).

IV.

A.

The appeal before us presents two issues. The first requires us to construe the "deadly weapon" provision of the robbery statute, N.J.S.A. 2C:15-1(b), where the "deadly weapon" is a simulated bomb. The question is whether, to convict a

11

defendant of threatening the immediate use of a bomb during a robbery, where a bomb is not displayed, the defendant must make some physical gesture in addition to a verbal threat, as the Appellate Division contends.  The second issue is whether the State presented sufficient evidence for the jury to conclude that the bank teller reasonably believed that defendant possessed a bomb.

B.

Before construing the deadly weapon provision of the robbery statute, we begin with some simple canons to guide us. When interpreting a statute, we engage in a de novo review. Farmers Mut. Fire Ins. Co. v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013).  We owe no deference to the trial court's interpretation or the Appellate Division's interpretation of a statute.  Ibid.  In this case, those interpretations of N.J.S.A. 2C:15-1(b) and N.J.S.A. 2C:11-1(c) are distinctly different.

Our primary goal in interpreting any statute is to identify the Legislature's intent.  State v. Gelman, 195 N.J. 475, 482 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). We do this by first looking at "the actual words of the statute, giving them their ordinary and commonsense meaning."  Ibid.  If the plain language yields the meaning of the statute, then our task is complete.  Ibid.  In addition, we will not interpret a

12

statute in a way that "leads to an absurd result."  DiProspero,
supra, 183 N.J. at 493 (citing Hubbard ex rel. Hubbard v. Reed,
168 N.J. 387, 392-93 (2001)).

We will only resort to extrinsic aids, such as legislative
history, if the plain language of the statute yields "more than
one plausible interpretation."  Id. at 492.  Any ambiguities
that remain after resorting to extrinsic aids must be resolved
in favor of the defendant, given our strict construction of
penal statutes.  Gelman, supra, 195 N.J. at 482.

We now turn to the relevant provisions of the New Jersey
Code of Criminal Justice.

V.

A.

A defendant commits second-degree robbery "if, in the
course of committing a theft, he . . . [t]hreatens another with
or purposely puts him in fear of immediate bodily injury."
N.J.S.A. 2C:15-1(a)(2).  Second-degree robbery is elevated to a
first-degree crime "if in the course of committing the theft the
[defendant] . . . is armed with, or uses or threatens the
immediate use of a deadly weapon."  N.J.S.A. 2C:15-1(b).  The
crux of this case is the definition of deadly weapon.

"Deadly weapon" is broadly defined in N.J.S.A. 2C:11-1(c)
as

13

> any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
>
> [(Emphasis added).]³

To "fashion" means to "to give a particular shape or form to; make." Webster's Unabridged Dictionary of the English Language 700 (2001). The meaning of "fashioned" is reasonably broad and is not limited to purposeful bodily movements.

The definition of "deadly weapon" in N.J.S.A. 2C:11-1(c) permits a defendant to be convicted of first-degree robbery even if he had no real weapon -- just a simulated one -- during the commission of the crime. However, a first-degree robbery conviction will not be sustained unless the victim possessed "a subjective belief that the device or instrument [or material or substance was] 'capable of producing death or serious bodily injury,' and . . . that that subjective belief [was] a

---

³ In State v. Butler, 89 N.J. 220, 228 (1982), we interpreted "threatens the immediate use of a deadly weapon" in the robbery statute, N.J.S.A. 2C:15-1(b), to require that that the defendant possess an actual deadly weapon to be convicted of first-degree robbery. At the time we were deciding Butler, the Legislature amended the definition of "deadly weapon" in N.J.S.A. 2C:11-1(c) to cover simulated-weapon cases. Butler, supra, 89 N.J. at 229 n.3 (citing L. 1981, c. 384 (eff. Jan. 4, 1982)).

14

reasonable one under the circumstances." Hutson, supra, 107 N.J. at 227-28 (interpreting N.J.S.A. 2C:11-1(c)).

Thus, a deadly weapon includes not only a real weapon, such as a gun, but also a simulated weapon -- an object fashioned to look like a gun, such as a finger in a pocket. Id. at 227-28. However, the "device, instrument, material or substance" that is fashioned to look like a weapon must be capable of leading a reasonable person to believe it is in fact a weapon. N.J.S.A. 2C:11-1(c). Needless to say, a simulated deadly weapon will have the ability to induce the same degree of terror in a victim as an actual weapon. In amending the statutory definition of deadly weapon to include a feigned weapon, the Legislature decided that no distinction should be made between real deadly weapons and simulated ones in elevating the range of punishment for a robbery.

B.

The language covering simulated weapons in N.J.S.A. 2C:11-1(c) is broad enough to encompass the multitude of ways in which a "device, instrument, material or substance" can be fashioned by a creative robber into something that generates a reasonable belief that it is or conceals a lethal weapon. After all, the robber who pretends to possess a deadly weapon intends that the victim believe that he has a real one, so he is unlikely to reveal that the supposed gun in his pocket is just a finger.

15

Likewise, a robber pretending to conceal a bomb on his body will fashion his appearance to bolster the impression that he is armed with such a weapon. "[I]t is the reasonable impression created by that which is presented to the victim that is controlling." Hutson, supra, 107 N.J. at 229. Thus, "the victim need not actually see the object, so long as . . . [it] is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious bodily harm or death." Id. at 230.

In determining whether a robber has fashioned a "device, instrument, material or substance" for the purpose of giving the impression he is armed with a deadly weapon, see N.J.S.A. 2C:11-1(c), courts typically have looked to the totality of the circumstances. Each case depends on the factual context in which the threat is made.

In State v. LaFrance, the defendant, during the course of a home-invasion robbery and sexual assault, told his victims that he had a gun, positioned his hand inside his coat "to make it appear that he had a gun," and repeatedly threatened "to blow [the victims'] brains out." 224 N.J. Super. 364, 367-68 (App. Div. 1988), rev'd on other grounds, aff'd o.b. on this issue, 117 N.J. 583, 595 (1990). In fact, the defendant was not armed with a gun. Id. at 369. Although the defendant was not armed, the Appellate Division concluded that the evidence was

16

sufficient for the victims to reasonably "believe that [the] defendant possessed a gun" by his "use of his hand to simulate" one. Id. at 372. The Appellate Division affirmed the defendant's conviction of first-degree robbery. Ibid.

In State v. Huff, the defendant entered a 7-Eleven store wearing a dark stadium jacket; told the cashier, "I have a gun here," as he patted his waist; and demanded the money in the cash drawer. 292 N.J. Super. 185, 188 (App. Div. 1996), aff'd o.b., 148 N.J. 78 (1997). In affirming the defendant's conviction for first-degree robbery, the Appellate Division held that the evidence was sufficient for the victim to reasonably believe that the defendant was armed with a concealed gun, even though the defendant had no gun. Id. at 191.

We have twice addressed the sufficiency of evidence necessary in a simulated-weapon robbery case. In Chapland, supra, the evidence showed that the defendant attempted to rob the victim a short distance from her home. 187 N.J. at 278. The defendant came from behind the victim and grabbed her pocketbook from her shoulder, and a struggle ensued. Id. at 278, 291. When the victim did not let go of the purse, the defendant "pretended to reach for something behind his back, simultaneously threatening 'Give me your pocketbook, bitch.'" Id. at 291. The defendant "admitted that the impression that he wanted to convey, from the timing and content of his gesture and

17

words, was to have his victim think that he had a weapon." Id. at 291-92. Given the defendant's overall conduct, we concluded that "it was permissible for a jury to find that a victim could form the reasonable impression that a weapon was concealed behind defendant" and affirmed the defendant's conviction for first-degree robbery. Id. at 292-93. We held that "[a]n unequivocal or unambiguous simulation of a weapon possessed, as well as an ambiguous or equivocal gesture coupled with threatening words that complete the impression of a concealed weapon, can provide a sufficient factual basis for conviction of first-degree robbery." Id. at 292.

In Hutson, supra, we found the evidence insufficient to support a conviction of first-degree robbery based on the threat of a simulated deadly weapon. 107 N.J. at 230. In that case, the defendant and his friend were passengers in a taxicab. Id. at 223. The taxicab driver testified that one of the two passengers demanded money and that one of them stated he had a gun, although the driver identified the friend as describing the gun as "a Magnum." Id. at 224. When the driver looked back, he saw one of the men holding a "little newspaper." Ibid. Based on a thorough reading of the transcript, we concluded that the evidence did "not generate an inference that [the] defendant had created the reasonable impression that he was concealing a weapon under a newspaper." Id. at 229. We did not suggest that

18

a newspaper could not be fashioned in a way to "imply either that it conceals [a deadly weapon] or is itself such a weapon"; we simply held that the record "[did] not allow a finding beyond a reasonable doubt." Id. at 230.

We can draw several lessons from these cases. First, we must look to the totality of the circumstances to determine whether the victim reasonably believed that the defendant was armed with a deadly weapon. Second, N.J.S.A. 2C:11-1(c)'s broad reference to "any . . . device, instrument, material or substance, whether animate or inanimate," includes cases in which a body or a body part is fashioned to reasonably appear as a deadly weapon. For that reason, in Chapland, supra, we explained that "a first-degree robbery conviction may be based on the use of a hand or gestures, coupled with threatening words, simulating possession of a weapon." 187 N.J. at 291; see also Huff, supra, 292 N.J. Super. at 190 (defendant patted waist with hand suggesting presence of gun); LaFrance, supra, 224 N.J. Super. at 372 (defendant created bulge in coat with hand suggesting presence of gun).

In the case of an object fashioned to appear as a concealed gun or a knife, it may be understandable that a robber would make some gesture to indicate he is armed if for no purpose other than to underscore the credibility of his threat. The objective is to persuade the victim that the simulated weapon is

19

real.  So, for example, in Huff, supra, the robber, clothed in a stadium jacket, told the store cashier, "I have a gun here," and patted his waist -- the place a gun would likely be concealed -- to fortify the impression that he was armed.  292 N.J. Super. at 188.

But the gesture that may be necessary to make credible the threat that a feigned object is a gun or a knife may not be essential to reasonably persuade a victim that a robber's body is outfitted as a bomb or that a bomb is secreted in a shoe or some other apparel.  It is widely known that individuals have concealed explosive devices in their shoes, United States v. Reid, 369 F.3d 619, 619-20 (1st Cir. 2004), and undergarments, United States v. Abdulmutallab, 739 F.3d 891, 895 (6th Cir. 2014).  Explosive devices are incorporated into vests and belts worn around the body.  United States v. Amawi, 695 F.3d 457, 465-68 (6th Cir. 2012) (describing facts of prosecution for distributing how-to videos on suicide-bomb vests), cert. denied, ___ U.S. ___, 133 S. Ct. 1474, 185 L. Ed. 2d 387 (2013); cf. United States v. Conaway, 713 F.3d 897, 898-900 (7th Cir. 2013) (suicide-bomb vest feigned with mesh belt, inert putty, and curling iron).  There is also the reported case of Brian Wells, who robbed a PNC Bank in Erie, Pennsylvania, with a real bomb affixed to his neck and torso.  United States v. Diehl-Armstrong, 739 F. Supp. 2d 786, 788 (W.D. Pa. 2010), aff'd, 504

20

Fed. Appx. 152 (3d Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 958, 184 L. Ed. 2d 744 (2013). The bomb later detonated and killed Wells. Ibid.

A robber does not have to pat his chest or shoe to reinforce the impression that he is carrying a bomb. Such a gesture is simply superfluous. Because a bomb is known to have the capacity to cause mass carnage and destruction, the threat to use such a weapon is likely to induce terror greater than the threat of a gun or knife. A victim threatened with the immediate detonation of a bomb is not likely to ask for proof of its existence. A robber who claims he is armed with a bomb and is garbed in loose-fitting clothing that may conceal an explosive device should expect that he will be taken at his word.

### C.

Our case law interpreting the meaning of deadly weapon in N.J.S.A. 2C:11-1(c) does not take a one-size-fits-all approach. As noted, we have looked at the totality of the circumstances of a robbery in assessing whether a defendant has presented a credible threat that he is armed with a deadly weapon. See Chapland, supra, 187 N.J. at 286 (identifying issue in Huff as "whether the circumstances of a simulated weapon were sufficient to sustain the defendant's conviction of first-degree robbery"); Hutson, supra, 107 N.J. at 227 (requiring reasonableness "under

21

the circumstances"). The clothing that a defendant is wearing at the time of a robbery as well as the placement or concealment of his hands is highly relevant in assessing the credibility of the threat. See, e.g., Huff, supra, 292 N.J. Super. at 190.

It is true that a "threat or reference to a deadly weapon alone is not enough." Hutson, supra, 107 N.J. at 227. That is because the jury must find that something has been fashioned to appear as a deadly weapon under N.J.S.A. 2C:11-1(c). In determining whether a victim had an actual and reasonable belief that the defendant was armed with a deadly weapon, the factfinder, in surveying the totality of the circumstances, must consider the defendant's words that convey the threat, his overall conduct, his dress, and any other relevant factors.

Simulated deadly weapons will either be concealed or disguised. A victim may not know for certain that a robber is armed with such a weapon. That the victim believes that the robber may be armed with a deadly weapon is sufficient to satisfy the actual-belief requirement. That subjective belief, however, must also be reasonable under the circumstances. See Hutson, supra, 107 N.J. at 227-28.

One's body and body parts and clothing can be fashioned to appear as a deadly weapon or to conceal one. Nothing in the language of N.J.S.A. 2C:11-1(c) precludes a victim from reasonably believing she is facing a robber armed with a deadly

22

weapon when the defendant verbally claims to possess a bomb and presents his body and clothing to convey a credible bomb threat.

With those principles of law in mind, we next turn to whether the State presented sufficient evidence to surmount a motion for judgment of acquittal on first-degree robbery at the close of the evidence.

VI.

At the close of the evidence, the defendant moved for a judgment of acquittal, claiming that "the evidence [was] insufficient to warrant a conviction" of first-degree robbery. See R. 3:18-1.  In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review.  See State v. Bunch, 180 N.J. 534, 548-49 (2004); Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 3:18-1 (2014).  We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt.  State v. Reyes, 50 N.J. 454, 458-59 (1967).

By that standard, we now view the evidence.  The bank teller observed defendant, as he approached her counter, wearing bright-colored pants and a camouflage hooded sweatshirt covering an oversized t-shirt.  Leaning over the counter with his hood

23

over his head, he told her either "I have a bomb," "I have a bomb strapped to me," or "I have a bomb strapped to my chest." At the same time, he demanded either seven or nine million dollars. The teller could not see defendant's torso, hands, or feet. The teller was faced with an unequivocal threat.

She could not know for certain whether defendant, in fact, was armed with a bomb. She acknowledged that, in those desperate moments, at one point she thought he did not have a bomb because it would be "silly" for a person to blow himself up for money, and at another point she thought "there [was] a very good possibility that [he had] a bomb" because he might be "crazy enough to do something like that." To the extent that the teller gave inconsistent statements concerning her belief, those contradictions were for the jury to resolve.

The issue is -- giving the State the benefit of all favorable inferences -- whether the teller had an actual and reasonable belief that defendant was carrying a bomb in or under his clothes. Today, the sad reality is that persons have armed themselves with bombs concealed under their clothes, in shoes, and in headgear. In a real way, persons have "fashioned" themselves as bombs. In one well-publicized bank robbery case, a robber had a bomb attached to his neck and torso set to explode -- and tragically, it did. Diehl-Armstrong, supra, 739 F. Supp. 2d at 788.

24

In this case, the teller admitted that she was scared and gave defendant $552 without a dye pack or marked bills.  The inference drawn in favor of the State is that the teller would not have parted with the bank's money if she did not believe the threat was real.  The teller could not know defendant's mental or emotional condition, his background, or the story of his life that brought him to this violent point.  She did not have to wager whether he might or might not carry out a seemingly irrational act because of mental illness, desperation, or some misbegotten ideological belief.  No useless gesture was required to give defendant's threat of a deadly weapon further credence, and if one were needed, what would it be?

Defendant's words were not uttered in a vacuum.  Defendant was not attired in a t-shirt, shorts, and sandals, but in clothes that easily could have concealed a real bomb.  We disagree with the Appellate Division, which stated that the teller's belief about the possible presence of a bomb "bore no reference to the conduct, clothing or demeanor of defendant."  During her testimony, in response to a question whether she saw a bomb, the teller answered, "No," but explained, "he had a big hooded sweatshirt on."  The teller was not blissfully unaware that defendant's clothes might conceal a bomb.

The Appellate Division did not give the State the benefit of the favorable testimony and favorable inferences that

25

supported the State's theory that the teller actually and reasonably believed defendant was armed with a deadly weapon. Instead, the Appellate Division acted as a factfinder.

Given the totality of the circumstances of this bank robbery, including defendant's words, conduct, and clothing, as well as contemporary knowledge that bombs have been concealed on persons, a rational jury could have found that defendant "fashioned" himself in a way that led the teller to reasonably believe that he possessed a bomb that was "capable of producing death or serious bodily injury," N.J.S.A. 2C:11-1(c).

Accordingly, the Appellate Division erred by entering a judgment of acquittal.[4]

VII.

For the reasons expressed, we reverse the judgment of the Appellate Division and reinstate defendant's conviction of first-degree robbery. We remand to the Appellate Division for consideration of the evidentiary issue it did not reach.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

---

[4] We note that the Appellate Division's entry of a judgment of acquittal on the deadly-weapon issue should not have led to an outright acquittal. The jury made separate findings of guilt on both second-degree and first-degree robbery. The finding of guilt on second-degree robbery was not at issue, and therefore the Appellate Division should not have vacated that lesser-included conviction.

26

SUPREME COURT OF NEW JERSEY

NO.    A-8                           SEPTEMBER TERM 2012

ON CERTIFICATION TO      Appellate Division, Superior Court

STATE OF NEW JERSEY,

         Plaintiff-Appellant,

                v.

KELVIN WILLIAMS,

         Defendant-Respondent.

DECIDED            August 11, 2014
               Chief Justice Rabner              PRESIDING
OPINION BY             Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1