**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3852-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEO B. GERMAIN,

    Defendant-Appellant.

_____

Submitted November 13, 2024 – Decided April 2, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 21-09-1756.

Law Offices of Jonathan F. Marshall, attorneys for appellant (Jeff Thakker, of counsel; Jonathan F. Marshall, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Leo B. Germain appeals from his jury trial convictions for first-degree murder, first-degree conspiracy to commit murder, and related weapons offenses. He contends: (1) the trial court should have directed a verdict of acquittal after the prosecution rested; (2) the State deprived him of a fair trial by concealing the identity of a crime-participant who fired shots near the crime scene; (3) the trial court erred by not ordering a new trial based on newly discovered evidence; and (4) at sentencing, the trial court impermissibly delegated the prosecutor the authority to determine whether to apply mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12) ("The willingness of the defendant to cooperate with law enforcement authorities.").

We have carefully reviewed the record in light of the parties' arguments and governing legal principles. We are unpersuaded by defendant's contention that the State's circumstantial proofs were insufficient to support defendant's guilty verdicts. However, we agree with defendant that his discovery and due process rights were violated by the State's failure to disclose the identity of a juvenile who left the crime-scene building minutes before defendant fled and was seen firing shots into the building. The Essex County Prosecutor's Office's (ECPO) efforts to contact the juvenile through his grandmother were first revealed at trial during the lead detective's cross-examination testimony. The

2

disclosure that law enforcement had determined the juvenile shooter's identity caught both defense counsel and the trial judge by surprise. We conclude that the failure to provide pretrial discovery on the identification of the shooter shown in the surveillance video and on police efforts to contact him through his grandmother prevented the defense from conducting its own investigation into the juvenile shooter's role in the homicide. In these circumstances, we are constrained to reverse defendant's convictions and remand for a new trial.

I.

We discern the following facts and procedural history from the record. On June 10, 2021, police responded to a report of gunshots at an apartment building on Seymour Avenue in Newark. Law enforcement collected surveillance video footage from multiple locations. The video footage shows a white Mercedes Benz parked across the street from the Seymour Avenue address at 11:59 a.m. Three individuals then exit the vehicle and enter the apartment.

Roughly a minute later, a different person wearing a gray shirt—later determined to be a juvenile—exited the building with one of the Mercedes occupants. The juvenile turned back and fired gunshots toward the building before fleeing on foot. Police later recovered nine-millimeter shell casings outside nearby the place where the juvenile fired the gun. The second Mercedes

occupant exited the apartment building approximately thirty seconds after the juvenile fired the gunshots. About a minute later, the third occupant—later identified as defendant—exited the building wearing a green shirt and ran towards the Mercedes.

Video footage also caught the Mercedes arriving at an apartment building on Stuyvesant Avenue in Irvington about seventeen minutes after the shooting. The video shows defendant "clutching his pants" as he walked toward the building. Roughly an hour and a half after entering, defendant walked out of the building wearing a baseball cap and a different shirt. The video also shows defendant taking the temporary tags off the Mercedes.

The investigation revealed that the Mercedes was registered to Kayle Sutherland who also owned a BMW. In addition, the investigation discovered that defendant had previously been issued a summons while driving Sutherland's BMW.

When detectives entered the apartment building on Seymore Avenue following the report of gunshots, they found numerous shell casings. The victim, Carlos Vargas, was laying at the top of the stairs in a pool of blood with a gunshot wound to the head. Detectives discovered two different types of shell casings near the body and along the stairs. In total, they found three different

4

types of shell casings which included those collected outside near the apartment building's entrance. Police also found a wad of money and a cell phone near the victim's body. They also recovered a mask at the scene, however, police never found a handgun.

In September 2021, defendant was charged by indictment with first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2; first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). The matter was tried before a jury on March 27 and March 28, 2023. On March 29, the jury returned guilty verdicts on all counts.

On July 7, 2023, defendant moved for a new trial, claiming there was newly discovered evidence. Three days later, the trial court sentenced defendant to concurrent sentences totaling thirty years, with a thirty-year parole ineligibility period. On July 24, the court denied defendant's motion for a new trial and rendered an oral opinion. This appeal followed. Defendant raises the following contentions for our consideration:

POINT I

[DEFENDANT] WAS ENTITLED TO AN ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.

POINT II

THE PROSECUTOR'S CONCEALMENT OF GRAY SHIRT'S IDENTITY DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III

THE TRIAL COURT SHOULD HAVE ORDERED A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

POINT IV

THE SENTENCING JUDGE, NOT THE PROSECUTOR, SHOULD HAVE DECIDED WHETHER MITIGATING FACTOR [TWELVE] APPLIES.

II.

Although we reverse defendant's convictions based on a discovery violation, we first address his contention that he was entitled to an acquittal at the close of the State's case since any such conclusion would preclude a retrial on double jeopardy grounds. See State v. Miles, 229 N.J. 83, 92 (2017) (explaining that the Double Jeopardy Clause of both the United States Constitution and the New Jersey Constitution protect against a second prosecution for the same offense after acquittal). Specifically, defendant

contends that "[a]ssuming (as the jury evidently found) that [defendant] was [the person wearing a] [g]reen [s]hirt in the video footage, there is no proof that he shot [the victim], that he conspired to have anyone killed, or that he anticipated violence at [] Seymour Avenue."

We note at the outset that this contention was raised under unusual procedural circumstances. Defense counsel did not make a motion for judgment of acquittal at the close of the State's case. Rather, it was the prosecutor who sua sponte stated she needed to "put [it] on the record,"[1] arguing the State was entitled to all reasonable inferences. The prosecutor proceeded to summarize the State's evidence: witness testimony, video surveillance, defendant driving the vehicle that belonged to his "intimate friend," defendant fleeing the scene approximately a minute and a half after the shooting, footage of defendant "clutching his pants," defendant looking out the window onto Stuyvesant Avenue, defendant changing his hat and shirt, and defendant taking the tags off the Mercedes. When the trial court asked defense counsel if he wanted to

---

[1] We are satisfied the directed verdict contention defendant raises on appeal is properly before us despite defendant's failure to file a motion for a judgment of acquittal at the trial court level. See R. 2:10-2 (explaining that appellate courts may consider allegations of error not brought to the trial court's attention if it meets the plain error standard); State v. Clark, 251 N.J. 266, 286–87 (2022) (stating that, under the plain error standard, we disregard any such error unless "clearly capable of producing an unjust result").

A-3852-22

respond, counsel declined. The court then held that a reasonable jury could find defendant guilty of the charges beyond a reasonable doubt and the State had satisfied its burden.

"In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review." State v. Williams, 218 N.J. 576, 593-94 (2014); see also State v. Cruz-Pena, 243 N.J. 342, 348 (2020); State v. Jones, 242 N.J. 156, 168 (2020); State v. Fuqua, 234 N.J. 583, 590 (2018). Reviewing courts "assess the sufficiency in the record anew, and therefore owe no deference to the findings of the trial court." State v. Berry, 471 N.J. Super. 76, 99 (App. Div. 2022), aff'd in part as modified, rev'd in part on other grounds, 254 N.J. 129 (2023).

Furthermore, "[w]e must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Williams, 218 N.J. at 594 (2014) (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)). The State's evidence must also be viewed in its entirety, "be that evidence direct or circumstantial." Jones, 242 N.J. at 168 (quoting Reyes, 50 N.J. at 459).

Applying this standard and giving the State the benefit of all reasonable inferences, we are satisfied that while the State's case is circumstantial and by no means overwhelming, a reasonable jury could find defendant guilty of the crimes charged. We are unpersuaded, moreover, by defendant's argument, raised for the first time on appeal, that:

> The State's failure to examine available evidence also warrants acquittal. What appears to have been [the victim]'s cell phone potentially contained information establishing whether he knew one or more of the individuals at [] Seymour Avenue, including [g]ray [s]hirt. Detectives inexplicably gave up on the phone after it failed to power up.

ECPO homicide task force Detective Hervey Cherilien testified that the victim's "phone doesn't work." Detective Cherilien acknowledged on cross-examination that he made no attempt to have it repaired. Defendant at trial was free, of course, to argue to the jury that the investigation was deficient on this score. The lack of investigative rigor with respect to the stored contents of the victim's phone, however, does not provide a basis upon which to direct a verdict of acquittal. Applying the principle that the State is entitled to all favorable inferences, see Williams, 218 N.J. at 594, we decline to assume that the stored information could have been retrieved or that it would be exculpatory as to necessitate an acquittal.

A-3852-22

We turn next to defendant's contention that the State committed a discovery violation that deprived him of his right to a fair trial. Specifically, defendant contends the State withheld information pertaining to the identity and whereabouts of the gray-shirted juvenile who was seen firing shots and fleeing from the Seymour Avenue apartment building just before defendant emerged.

A.

To provide context for our analysis, it is necessary to reproduce a large segment of trial transcript. The following colloquy concerning the gray-shirted shooter occurred during Detective Cherilien's cross-examination:

> [DEFENSE COUNSEL:] Right. And the [nine-millimeter]'s were outside with this other guy nobody seems to know—
>
> [DETECTIVE CHERILIEN:] I know, that's—
>
> [DEFENSE COUNSEL:] —is that correct?
>
> [DETECTIVE CHERILIEN:] Well, the investigation now, you know, we've managed to identify shooting the [nine-millimeter]?
>
> [DEFENSE COUNSEL:] Yeah.
>
> [DETECTIVE CHERILIEN:] Yeah.
>
> [DEFENSE COUNSEL:] Okay. Do you know where he is?

10

[DETECTIVE CHERILIEN:] Yeah, I do.

THE COURT: Sidebar.

During the ensuing sidebar, the following discussion took place:

[DEFENSE COUNSEL]: Wow.

THE COURT: So what's going on.

[DEFENSE COUNSEL]: Total surprised by this. Supposedly didn't know who he is.

THE COURT: Whoa, whoa, whoa, whoa. I'm asking the questions. [D]o you know . . . the answer to this question?

[DEFENSE COUNSEL]: Where are we going?

THE COURT: No, no. Do you know whether or not he knows where . . . this person is?

[DEFENSE COUNSEL]: He just said he did.

THE COURT: Did you know that?

[DEFENSE COUNSEL]: No.

THE COURT: Okay. Do you know . . . what he's referring to?

[PROSECUTOR]: Judge, he—he indicated—he's indicated to me that he made attempts to speak with him and hasn't been able to. He has an address for him but he's never been able to locate him.

THE COURT: Okay. All right. So he just said he knows where he is.

11

A-3852-22

[PROSECUTOR]: I'm assuming he means the address that comes up in the law enforcement database that they looked in.

THE COURT: I'm not assuming anything. I'm letting the jury go so we can find out what's going on because, you know—all right.

(Sidebar concluded)

THE COURT: I'm going to ask the jury to step into the jury room for a few moments. Do not discuss the case, it's still not over.

(Jury excused)

THE COURT: All right. So the jury's been excused, the witness is still under oath, defendant and counsel are present. So, [o]fficer, you indicated you knew the answer to where the individual, the one just referred to in the videotape, you know where he is now?

[DETECTIVE CHERILIEN]: Last I knew he was at his—

THE COURT: No, no, do you know where he is now?

[DETECTIVE CHERILIEN]: No. Right now, no.

THE COURT: Have you ever made contact with him?

[DETECTIVE CHERILIEN]: Yes, I did. Well, take that back. I made contact with his grandmother.

THE COURT: Okay. All right. Do you have . . . any information as to where he is today?

[DETECTIVE CHERILIEN]: No.

12

THE COURT: Okay.

[DETECTIVE CHERILIEN]: I made contact with his grandmother, I asked to speak to him in reference to this investigation, she wasn't willing to produce him, and that was pretty much the end of it.

THE COURT: Okay.

[DEFENSE COUNSEL]: I'll resume questioning with the jury.

THE COURT: Okay. Anything further before we bring the jury back?

[PROSECUTOR]: Judge, just so we can clarify, the individual who you believe that to be he's a juvenile, or was a juvenile at the time, correct?

[DETECTIVE CHERILIEN]: One hundred percent juvenile.

[PROSECUTOR]: Which is why you would seek permission from his grandmother, correct?

[DETECTIVE CHERILIEN]: That is correct.

[PROSECUTOR]: But you have never spoken to that individual, correct?

[DETECTIVE CHERILIEN]: Absolutely not.

THE COURT: Okay. Anything further?

[DEFENSE COUNSEL]: I have to cross him in front of the jury.
THE COURT: Yeah, I know that. Before I bring the jury back out.

13

[DEFENSE COUNSEL]: I have nothing else.

THE COURT: Okay.

When the jury was brought back in, defense counsel continued his cross-examination:

> [DEFENSE COUNSEL:] Officer, do you recall a moment ago you told this jury where that individual who was shooting the [nine-millimeter] outside of [] Seymour, you knew where he was?
>
> [DETECTIVE CHERILIEN:] Yes, I do.
>
> [DEFENSE COUNSEL:] Have you had an opportunity to speak to him?
>
> [DETECTIVE CHERILIEN:] No, I have not.
>
> [DEFENSE COUNSEL:] Have you had an opportunity to have him tell you what—tell you, or any other detective who was involved in this case, what happened inside of [] Seymour?
>
> [DETECTIVE CHERILIEN:] No, we didn't speak to him.

During the subsequent hearing on defendant's motion for a new trial, the prosecutor explained:

> And with respect to the individual, Judge, with the gray shirt, you heard the testimony from the detective and he indicated that he tried to speak with him. And, again, he had indicated that he received information. The person on the video, and I think we went into detail

about it either on—during cross or at sidebar, this was an individual who was never identified on the video.

This was information that the detective got and tried to ascertain whether that information was true. This was not a situation where someone pointed out the person in the gray shirt and said that's Joe Smith, go and talk to him. This was not confirmed information and not confirmed identity which is why the detectives tried to go speak with him and were ultimately denied access to him because of his juvenile status.

## B.

We first acknowledge that as a general matter, the scope of our review on discovery disputes is limited. "A trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion." State v. Stein, 225 N.J. 582, 593 (2016). We "need not defer, however, to a discovery order that is well 'wide of the mark,' or 'based on a mistaken understanding of the applicable law.'" State v. Hernandez, 225 N.J. 451, 461 (2016) (citations omitted). Furthermore, "[o]ur review of the meaning or scope of a court rule is de novo; we do not defer to the interpretations of the trial court . . . unless we are persuaded by [its] reasoning." State v. Tier, 228 N.J. 555, 561 (2017) (citing Hernandez, 225 N.J. at 461). In this instance, so far as the record reflects, the trial court never expressly ruled on whether the

15

prosecutor complied with the State's discovery obligations with respect to the juvenile shooter.

Turning to a criminal defendant's discovery rights, it is well-settled in this State that "[t]he accused in a criminal case is generally 'entitled to broad discovery.'" State ex rel. A.B., 219 N.J. 542, 555 (2014) (quoting State v. D.R.H., 127 N.J. 249, 256 (1992)). As our Supreme Court explained in Hernandez, "New Jersey provides a broad range of discovery to an accused in a criminal case under Rule 3:13-3. This open-file approach is intended to ensure fair and just trials." 225 N.J. at 453; see also State v. Scoles, 214 N.J. 236, 252 (2013) (holding that "[t]o advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment").

Consistent with this "open-file approach," a defendant need not make a specific request for a specific document to be entitled to receive it. Rather, "Rule 3:13-3(b) grants a defendant automatic access to a wide range of relevant evidence . . . ." A.B., 219 N.J. at 555. Rule 3:13-3(b)(1)(F) specifically and explicitly requires the prosecution to disclose "persons who the prosecutor knows to have relevant evidence or information." Furthermore, it is well-established under New Jersey law and practice that a prosecutor is held

16

responsible for disclosing information possessed by police departments.  In State

v. Robinson, our Supreme Court made clear:

> Consistent with longstanding practice, statements and
> reports encompass reports that are in the possession of
> the prosecutor, law enforcement officials, and other
> agents of the State.  See State v. W.B., 205 N.J. 588,
> 608 [] (2011) (noting that once "a case is referred to the
> prosecutor following arrest by a police officer . . . , local
> law enforcement is part of the prosecutor's office for
> discovery purposes" (internal citations omitted)); State
> v. Murphy, 36 N.J. 172, 184 [] (1961) ("[A]lthough the
> State may, as it necessarily must, diffuse its total power
> among many offices and agencies, yet when the State
> brings its authority to bear upon one accused of crime,
> all of its agents must respond to satisfy the State's
> obligation to the accused.").  A contrary approach could
> create an incentive to delay furnishing reports to the
> prosecutor.

> [229 N.J. 44, 71 (2017).]

In addressing the unusual circumstances presented in this appeal, we find

helpful guidance in our decision in State v. Clark, 347 N.J. Super. 497 (App.

Div. 2002).  In that case, "[f]or over two years the fact that [a person] witnessed

[the crime] was known by the Brigantine Police Department."  Id. at 507.

Further, a detective for the State testified about his interaction with the witness

after the witness observed the crime.  Id. at 503.  The trial judge allowed the

detective to testify as to the witness's statements, ruling they were excited

utterances.  Ibid.  The defendant's counsel later "demanded the prosecutor supply

17

him with [the witness's] address and phone number, but the prosecutor refused." Id. at 505. The trial judge denied the defense's motion "for a continuance for one trial day in order for the defense to find and subpoena [the witness]." Ibid. The judge reasoned that the witness's testimony would merely be cumulative. Ibid.

We rejected the trial judge's determination, explaining that:

> [W]e are constrained to reverse the conviction and order a new trial due to the actions of the prosecutor and the failure of the trial judge to take proper remedial action to insure a fair trial. For over two years the fact that [a person] witnessed this incident was known by the Brigantine Police Department. That the information was also kept from the trial prosecutor did not adulterate its significance or the defendant's right to discover this information. As we previously stated, "[d]ue process in its constitutional sense is little more than a metonym for fair play." State v. Laganella, 144 N.J. Super. 268, 284 (App. Div. [1976]) []. Whether intentional or negligent, the failure to disclose this eyewitness deprived the defense of the opportunity to investigate and evaluate his testimony either to support the defense case or reveal conflicts with inconsistencies in the testimony of other State witnesses.
>
> [Id. at 507.]

We acknowledge there are distinguishing circumstances here. Unlike the situation in Clark, law enforcement did not speak with the person in the grey shirt and therefore, did not obtain any information from him. Defense counsel

18

did not make a specific request of the prosecutor for the juvenile shooter's name and contact information, ostensibly because defense counsel did not know that police had identified that witness/participant. Nor did defense counsel request a continuance, as in <u>Clark</u>, when he unexpectedly learned during Detective Cherilien's cross-examination that police had determined the identity of the gray-shirted shooter in the surveillance video. Despite these differences, we believe the overarching goal of safeguarding a defendant's constitutional right to conduct his own investigation is implicated—and directly threatened—on the facts before us.

We are unpersuaded by the State's argument that it had no obligation to disclose the juvenile shooter's identity because police were "unable to speak to him." The plain text of <u>Rule</u> 3:13 as well as the inherent nature of our "open-file" discovery system contradict any such limitation on the scope of a

prosecutor's discovery obligations.[2]  Even if police do not take a statement from a witness or third-party-guilt suspect, they must still disclose the person's identity and address, and how to contact them once that information is known.

We reject the State's contention that the identity of the witness is not "relevant information" within the contemplation of Rule 3:13.  Discovery entails more than turning over the fruits of a completed law enforcement investigation. The process serves to allow the defense to conduct its own investigation.  Cf. State v. Arteaga, 476 N.J. Super. 36, 53 (App. Div. 2023) (explaining that, for discovery purposes, information need only have "a tendency in reason" to "lead to the discovery of relevant evidence").  In this instance, we cannot assume the grandmother would have prevented the defense from interviewing the juvenile, or that he would be uncooperative.  Defendant has a right, based on constitutional principles and not just the discovery court rule, to determine

---

[2]  It is not clear on the record before us whether the detective or any other law enforcement officer prepared a report or other document regarding police communication with the grandmother that could be turned over under Rule 3:13. We note that law enforcement in these circumstances cannot evade the State's discovery obligations simply by choosing not to memorialize investigative efforts to identify and track down the juvenile who was shown firing a weapon in the surveillance video.  Further, we are incredulous that contact information for the grandmother and an account of the efforts to obtain her permission to speak with her grandson were not memorialized in a writing discoverable under Rule 3:13-3.

A-3852-22

whether the juvenile might provide testimony or information that contradicts the prosecution theory or that otherwise would be helpful to the defense.

Nor are we persuaded by the State's argument that "[s]ignificantly, defense counsel did not request any further action after the detective clarified the limited information he had, stating, 'I have nothing else.'" The State in its appeal brief characterizes defense counsel's spontaneous reaction as, "nonchalance concerning the alleged identity of grey shirt disprov[ing] that he had been 'sandbagged' as defendant now claims."

We decline to fault defense counsel for not asking for a brief continuance at this stage of the trial as occurred in Clark, 347 N.J. Super. at 505. We have no doubt from the record the surprise visited upon defense counsel was genuine, as shown by the trial court's immediate and unsolicited reaction to call a sidebar when the detective first revealed police knew who the juvenile shooter was. A one-day continuance as requested and denied in Clark would seem inadequate to undertake a meaningful defense investigation, especially considering that any statement that might be given by the juvenile shooter could significantly alter the defense theory and strategy well after opening statements were made. Although more could have been done by defense counsel—and the prosecutor and trial court as well—to analyze the pertinent law and propose remedial steps,

21

we are satisfied the discovery issue was adequately raised and preserved for appellate review. We note that pursuant to Rule 2:10-2, an appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial court. Here, the interests of justice preclude us from disregarding the late disclosure of the fact that law enforcement knew the identity of the juvenile who fled the crime scene while discharging a firearm in the direction of persons still in the building where the body was found.

In sum, while the trial court did not couch its ruling in terms of Rule 3:13-3, for all practical purposes, it decided that the State's failure to disclose the identities of the juvenile shooter and his grandmother was not a discovery violation warranting remediation. We disagree and find the trial court's handling of the belated disclosure so wide of the mark as to warrant appellate intervention even in the absence of a more formal and detailed motion for relief by defense counsel. See Hernandez, 225 N.J. at 461; see also Tier, 228 N.J. at 561. Indeed, this situation presents exactly the sort of surprise at trial that our discovery rules, practices, and policies are designed to prevent. We therefore are constrained to vacate defendant's convictions and remand for a new trial after the defense is afforded an opportunity to conduct its own investigation as to the juvenile shooter's role in the June 10, 2021 incident.

## IV.

In view of our ruling to vacate defendant's convictions and remand for a new trial, we need not address his contention that the trial court erred in denying his motion for a new trial based on newly discovered evidence in the form of testimony from two new witnesses. Nor do we need to address defendant's sentencing contention that the trial court erred with respect to the application of mitigating factor twelve.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-3852-22