**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5626-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL R. ZIOLKOWSKI,

    Defendant-Appellant.

_____

> Submitted February 5, 2019 – Decided February 26, 2019
>
> Before Judges Geiger and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 15-05-0241.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michael J. Confusione, Designated Counsel, on the brief).
>
> Francis A. Koch, Sussex County Prosecutor, attorney for respondent (Shaina Brenner, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Daniel R. Ziolkowski appeals from several trial court rulings and his convictions and sentences for harassment, possession of a weapon for an unlawful purpose, unlawful possession of a weapon, and criminal mischief arising out of a road rage incident. We affirm.

I.

The incident occurred during the evening of December 24, 2014, while defendant and his passenger were in a car followed by a vehicle occupied by Laura Counterman and her two passengers in Layton. The witnesses presented diverging accounts of what led up to and occurred during the incident.

A grand jury indicted defendant for two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (counts one and two); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count four); and third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count five). The case proceeded to a jury trial. The following testimony was adduced at trial.

Counterman was driving home to Pennsylvania from Christmas Eve church services in Netcong with her son, Anthony Autore and his girlfriend, Jocelyn Struble, seated in the rear. As she drove toward Dingmans Bridge, Counterman observed a car travelling in front of her abruptly brake.

A-5626-16T4

Counterman estimated she was about two car lengths behind the braking vehicle because she had ample time to stop. The vehicle in front of her quickly accelerated around a bend before abruptly stopping again. In turn, Counterman braked again, stopping about a car length short of impact with the other vehicle.

After the cars resumed driving, Counterman claimed she kept a further distance because she did not know why the car in front was stopping. The vehicle stopped again abruptly and Counterman followed suit. At this point, both cars were stopped on the roadway. The car in front then either reversed or was put in park. The driver, later identified as defendant, exited the vehicle and approached Counterman's car.

Counterman sounded her horn, dialed 9-1-1, and provided the offending vehicle's license plate number to dispatch. Counterman observed two occupants in the car in front of her. When the driver exited his car, Counterman testified he walked quickly toward her car as if "in a rage." The man was yelling, hitting Counterman's car, and carrying a knife. Autore also observed the knife and described it as a three-inch blade serrated toward the handle. The man stabbed the windshield and front left tire, and punched the door. In the midst of the attacks, the man stated Counterman was drunk, should not be driving, and was driving carelessly. Counterman identified defendant in court as the driver.

3

Autore and Struble were unable to identify the driver in court; however, defendant does not dispute he was involved in the incident.

While defendant was outside Counterman's vehicle, she tried to open her door because she thought if she pushed him off he would leave the car alone. She was unable to do so because defendant was pressed against the door, screaming and threatening her, and punching and kicking the door. Autore testified he heard defendant scream at Counterman that she was drunk and that she had followed him too closely; Autore also testified he heard defendant threaten to stab Counterman and knock her out. Struble testified similarly.

Counterman, Autore, and Struble observed defendant stab the window and left front tire three times resulting in a loud popping sound. Defendant then returned to his vehicle and quickly drove away as Struble observed his license plate.

Meanwhile, Counterman remained on the phone with a 9-1-1 operator. The 9-1-1 operator testified she remained on the phone with Counterman until she was able to confirm her location and ensure she was not physically hurt. The operator then transferred the call to the New Jersey State Police.

After defendant drove away, a woman from the car behind Counterman's vehicle approached and tried to calm her down and direct traffic around her.

4

Local residents exited their homes to assist Counterman and get her car off the road so traffic could resume. Specifically, Cameron Tidaback observed the two cars in the road from his bedroom window and heard a man yelling before witnessing the man run back to his car and flee the scene. After Cameron told his mother Maria what he saw, they both went outside to assist Counterman. Ms. Tidaback observed Counterman was emotional and shaking and, therefore, took the phone from her to complete the 9-1-1 call.

Dispatch ran the license plate number through several law enforcement databases and determined the vehicle was a 2012 Jeep SUV registered to defendant, who resided in Dingman's Ferry, Pennsylvania. Troopers were dispatched to the scene and arrived within twenty minutes.

Upon exiting her vehicle, Counterman observed dents on the left front door and slashes in the left front tire and windshield. Local residents offered to follow Counterman home because she was still so upset and worried.

After Counterman testified, defense counsel made a discovery request for her driver's abstract but the request was initially denied by the State, claiming the abstract was not relevant and therefore not discoverable. After oral argument, the prosecutor agreed to provide Counterman's driver's abstract.

A-5626-16T4

Sergeant Gregory Redden then contacted Pennsylvania authorities to obtain information and have them speak to the registered owner at his Pennsylvania address. Pennsylvania State Trooper Joseph Wasylyck testified he made contact with defendant on December 24, 2014, to determine if he had been in Layton that evening. Trooper Wasylyck observed a Jeep Liberty in defendant's driveway when he arrived at defendant's address. Defendant said he was in Layton earlier that day. Defendant relayed he was being tailgated so he brake-checked the car and then pulled over. Further, he stated the other vehicle pulled over behind him, so he got out and made contact with her; she tried to open her door but he pushed it shut and left. Defendant denied having a knife during the incident and denied slashing Counterman's tire.

Counterman incurred expenses in replacing her slashed tire. She obtained an estimate from an auto body shop that it would cost $201.05 to replace the windshield and $270.69 to repair the front door of her vehicle. A representative from the shop testified the damage to Counterman's vehicle included ding marks on the driver's side, soft dents in the left fender, and soft dents throughout the entire left door panel. The representative testified the total cost of repairs to the windshield and body panels would actually be $1075.00.

At the conclusion of the State's case, defendant moved for a judgment of acquittal, claiming the State failed to prove its case. Defendant argued the State failed to show: a threat to kill, a threat to commit a crime of violence, evidence defendant had a knife in his possession, and pecuniary loss in excess of $500. The trial court denied the motion.

Defendant did not testify. However, defendant's girlfriend, Barbara Braden, with whom he lived, and who was with him at the time of the incident, testified on his behalf. She gave the following version of the incident during her testimony. A car behind them was driving aggressively, swerving all over the road, and getting right behind them. Defendant brake-checked his vehicle one time and then pulled over. The vehicle pulled behind them so defendant stepped out of his car and approached the vehicle. Braden testified she heard a woman screaming, her door "came flying out," and defendant put his hand above her window, pushed the door shut, laughed, told her to call 9-1-1, and asked her if she were drunk. Defendant returned to the car and they left the area. Braden testified defendant did not have a knife that evening and he was calm throughout the incident.

After defendant rested he renewed his motion for judgment of acquittal. The trial court again denied the motion.

A-5626-16T4

The State requested a jury charge on flight. Defense counsel objected, arguing the charge prejudicially implied a criminal act occurred in fact, when such a determination was simultaneously before the jury. The trial judge overruled the objection but modified the model jury charge in light of defendant's concerns. The trial court gave the following flight charge to the jury:

> There is -- there has been some testimony in the case from which you may infer that the defendant fled shortly after the incident. <u>The defendant denies any flight and defendant denies that the acts he engaged in constituted flight, and the defendant denies committing all criminal acts.</u>
>
> <u>The question of whether a defendant fled after the commission of a crime is another question of fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight.</u> If you find that the defendant, fearing that an accusation or arrest would be made against him on these charges involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on the charges, then you may consider such flight in connection with all the other evidence in the case as an indication or proof of consciousness of guilt.
>
> Flight may only be considered as evidence of consciousness of guilt if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offenses charged in the indictment. If, after your consideration of all the evidence, if you find defendant, fearing an accusation or arrest would be made against him on the charges involved in the

A-5626-16T4

indictment, took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all the other evidence as an indication or proof of a consciousness of flight -- a consciousness of guilt. . . .

It is for you, as judges of the facts, to decide whether or not the evidence of flight shows a consciousness of guilt and the weight to be given to such evidence in light of all the other relevant evidence in the case.

[(Emphasis added).])

During summation, the assistant prosecutor suggested the defense witness Braden rehearsed her testimony with defendant prior to trial, stating:

Unlike a lot of cases, I suggest to you that the proof in this case has revealed that there are disputed facts, but there are a whole lot of undisputed facts. And that is thanks to the defendant's statement that he provided to Pennsylvania State Trooper Joseph Wasylyck and to what I would suggest was the rehearsed testimony of his girlfriend Ms. Braden.

The prosecutor further stated:

I submit to you, ladies and gentlemen, that everyone who testified here as a witness for the State was subpoenaed here and told the truth just like they remembered it, and that's why the inconsistencies happen. The people who have a reason to lie are the defense witnesses.

Why do I say that? I think you know. Everything that the defense is placing before you is, oh, I guess I admitted everything I did, I admitted everything I did,

9

I admitted everything I did except that which would get me into trouble, and so I'll come – I will tell the State Police my version of the facts and I'll get my girlfriend to go along with it when we get to the court. Mind you, this is the girlfriend who possessed all of these facts that . . . would have exonerated her boyfriend.

But she did not think it was important to share that information. Why? Nobody asked me. Does that make sense? I suggest to you that it does not.

You really have to judge what people have to gain and what people have to lose. And the State's witnesses to a person has absolutely nothing to gain, or for that fact, to lose by coming in here and telling you the truth.

If you apply the same standard to the defendant and his girlfriend, it doesn't wash. He has, as [defense counsel] calls it, his liberty to lose, and I think it's self-explanatory what his girlfriend would lose.

Defense counsel objected on the basis the assistant prosecutor implied defense counsel rehearsed her witnesses or colluded with the witness. The prosecutor denied he implied counsel engaged in such behavior, stating: "I explicitly said, . . . to compare the statement provided by the defendant to Trooper Wasylyck with the testimony of Ms. Braden. There was nothing about counsel." The trial judge noted defense counsel's objection but denied relief, stating, "according to my recollection, I do not believe that the jury can intimate that there was collusion involving you."

The jury found defendant guilty of the lesser included offense of harassment, N.J.S.A. 2C:33-4(c), on counts one and two, and the remaining counts as charged. Prior to sentencing, defendant moved for judgment of acquittal or a new trial. Defendant alleged the State failed to turn over discovery to the defense regarding Braden's back injury and disability status, previous prescription for morphine, and her use of methadone. The State had access to this information from a prior case against Braden that was resolved through her admission into pre-trial intervention (PTI), which was defended by the Public Defender's office. Defense counsel claimed she was blindsided when this information came out on cross-examination and that it tarnished Braden's credibility. The trial court denied the motion, emphasizing that Braden was a defense witness and was previously represented by the Office of the Public Defender thereby giving defendant access to the discovery. The trial court reasoned Braden could have been interviewed to "find out all the details about her background, if there's anything in her background that might – might be of impeachable quality in terms of her testimony." The trial court also found there was no prejudice because defense counsel was able to elicit from Braden that her methadone medication did not affect her recollection of the events or her testimony.

11

At sentencing, the trial court noted defendant's record included a prior 1997 conviction for simple assault and a 1990 successfully completed PTI diversion of aggravated assault and unlawful possession of weapon charges. The presentence report also revealed numerous arrests for other charges that did not result in convictions.

With regard to the need for deterrence, the trial court stated:

> unfortunately the privilege to operate a motor vehicle is abused all too frequently on the roadways of this [S]tate by people who drive in an erratic manner and affect adversely the interests of other operators who are on the roadway as well. So general deterrence clearly has to be addressed by the Court in the sentence the Court imposes.

The court also considered the need for specific deterrence because of the nature of defendant's prior record and his conduct during the incident in this case. Accordingly, the trial court applied aggravating factor nine (need for deterring defendant and others from violating the law), N.J.S.A. 2C:44-1(a)(9).

The trial court applied mitigating factors six (defendant will compensate the victim for the damage she sustained), N.J.S.A. 2C:44-1(b)(6); and ten (defendant is particularly likely to respond to probationary treatment), N.J.S.A. 2C:44-1(b)(10).

12

Defendant was sentenced as follows. On count one, a concurrent thirty-day jail term and a three-month suspension of driving privileges pursuant to N.J.S.A. 2C:43-2(c), with the suspension to run consecutively to any term of incarceration imposed. On counts three and five, defendant was sentenced to concurrent three-year terms of supervised probation conditioned upon concurrent 210-day jail terms. Defendant was also ordered to attend an anger management class and to have no contact with Counterman, Autore, and Struble. Appropriate fees and assessments were also imposed. Count two was merged into count one and count four was merged into count three for sentencing purposes. Defendant's motion for a stay of sentence pending appeal was denied. This appeal followed.

## II.

Defendant raises the following issues:

> POINT 1
> THE TRIAL COURT SHOULD HAVE GRANTED DEFENDANT'S MOTION FOR ACQUITTAL, JUDGMENT NOTWITHSTANDING THE VERDICT, OR, AT LEAST, A NEW TRIAL.[1]

---

[1] A motion for judgment notwithstanding the verdict (JNOV) is appropriate in civil jury trials under Rule 4:40-2(b). The proper motion in criminal trials is for judgment of acquittal under Rule 3:18-2.

POINT 2
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DISCOVERY THAT THE STATE FAILED TO PRODUCE, WARRANTING A NEW TRIAL.

POINT 3
THE TRIAL COURT ERRED IN CHARGING FLIGHT TO THE JURY.

POINT 4
THE PROSECUTOR EXCEEDED FAIR COMMENT ON THE EVIDENCE.

POINT 5
DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

A.

Defendant argues the trial court erred by denying his several motions for judgment of acquittal, and for a new trial. Defendant claims the State produced insufficient evidence to support a conviction as charged. He further contends the State failed to prove he threatened to kill, threatened to commit a crime of violence, was in possession of a knife, and a pecuniary loss in excess of $500. We find no merit in these arguments.

Motions for judgments of acquittal before a verdict are governed by Rule 3:18-1, which provides:

At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry

14

of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction. A defendant may offer evidence after denial of a motion for judgment of acquittal made at the close of the State's case without having reserved the right.

Post-verdict motions for acquittal are governed by Rule 3:18-2, which provides:

> If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made, even if not earlier made pursuant to R. 3:18-1 or it may be renewed within 10 days after the jury is discharged or within such further time as the court fixes during the 10-day period. The court on such motion may set aside a verdict of guilty and order the entry of a judgment of acquittal and may so order if no verdict has been returned.

"The standard for resolving a motion brought under either rule is the same." State v. Tindell, 417 N.J. Super. 530, 549 (App. Div. 2011). "In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review." State v. Williams, 218 N.J. 576, 593-94 (2014). "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id. at 594 (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)).

15

Under the Reyes standard, a review of whether to grant a judgment of acquittal after a verdict is returned is confined to the State's evidence. State v. Sugar, 240 N.J. Super. 148, 152-53 (App. Div. 1990) (citing State v. Kluber, 130 N.J. Super. 336, 341-42 (App. Div. 1974)). But where, as here, a defendant is convicted of a lesser-included offense, the court should assess if the conviction of the lesser included offense is sustainable based on the entire record, including the evidence adduced by the defense. Id. at 153.

Motions for a new trial based on a verdict against the weight of the evidence are governed by Rule 3:20-1, which states:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. . . . The trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (alteration in original) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)).

The court found the evidence presented was sufficient for a jury to return a verdict of guilty. We agree. Counterman and Autore testified that defendant approached their vehicle brandishing a knife. Counterman, Autore, and Struble each testified to threats of violence, and specifically that defendant threatened to kill Counterman, stab her, and knock her out. They also testified defendant stabbed Counterman's windshield, punched her car, kneed her car, pressed against her car, stabbed her tire, and then quickly drove away.

Autore and Struble both testified to the hysterical reaction this incident caused in Counterman. Their testimony was corroborated by the testimony of Cameron and Maria Tidaback, the recorded 9-1-1 call, and the visible damage caused to the vehicle. Furthermore, defendant admitted to Trooper Wasylyck he was at the scene the evening the incident occurred.

Defendant asserts his acquittal on the terroristic threat charges requires vacating the possession of a weapon for an unlawful purpose conviction because the "unlawful purpose" the jury was told to consider under count three was the same "threat to kill" the jury found defendant not guilty of under counts one and two. In fact, the trial judge instructed the jury the unlawful purpose alleged in this case was to threaten to kill or assault Counterman, or to kill or assault her, or to damage her vehicle. Based on the testimony and photographic evidence,

17

the jury could have found defendant possessed a weapon for the unlawful purpose of damaging Counterman's car.

Finally, defendant claims the proofs for the criminal mischief conviction were insufficient because N.J.S.A. 2C:17-3(a)(1) requires a pecuniary loss in excess of $500. The State produced testimony by an auto-body shop employee who explained the total cost to repair the damage was actually $1075.

While defendant emphasized inconsistencies in the testimony of the State's witnesses and the contradicting testimony by Braden, the determination of the credibility and weight to be given to the testimony was for the jury to decide. Defendant has not demonstrated the verdict was against the weight of the evidence. Nor has he clearly and convincingly shown there was a manifest denial of justice. We therefore find the trial court did not abuse its discretion by denying defendant's motion for judgment of acquittal or for a new trial.

B.

Defendant next argues the trial court erred by denying his motion for discovery. After Counterman testified, defendant made a discovery request for her driver's abstract. The State initially denied the request, claiming the driver's abstract was not relevant and, therefore, not discoverable. Counterman was not charged with any traffic violations arising from the incident. Her driver's

18

abstract was not exculpatory evidence. The trial court denied defendant's motion for turnover of the driver's abstract. Even so, the State later turned over Counterman's driver's abstract to the defense. Aside from any concern regarding the use of the driver's abstract regarding prior bad acts in the form of motor vehicle violations on prior occasions, we discern no abuse of discretion by the trial court or resulting unfair prejudice to the defense.

Defendant further contends the trial court erred by denying a new trial because the State failed to turn over discovery of information regarding Braden's prior back injury and disability status, and prescribed medication for morphine and use of methadone, which the State obtained during Braden's prior criminal matter that was resolved through PTI. As noted by the trial court, defense counsel was able to elicit from Braden that her methadone medication did not affect her recollection of the events or her testimony. We find no discovery violation by the State, much less unfair prejudice requiring a new trial.

C.

Defendant complains the trial court erred by charging flight to the jury. We disagree.

"For departure to take on the legal significance of flight, there must be circumstances present and unexplained which, in conjunction with the leaving,

19

reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt." State v. Ingram, 196 N.J. 23, 46 (2008) (quoting State v. Mann, 132 N.J. 410, 418-19 (1993)). The record includes testimony of four witnesses, including Cameron Tidaback, that defendant ran back to his car and quickly drove away from the scene of the crime. We conclude there was sufficient evidence to support a flight instruction.

Defense counsel objected to a flight charge, arguing the charge prejudicially implied a criminal act had, in fact, occurred, when such a determination was simultaneously before the jury. Rather than just charging Model Jury Charge (Criminal), "Flight" (rev. May 10, 2010), the trial court carefully tailored the model charge to the facts of the case, thereby addressing the very concerns raised by defense counsel. Considering the charge as a whole, the flight charge given by the trial court was not misleading or ambiguous.

D.

Defendant next contends the prosecutor exceeded fair comment on the evidence during his closing argument. We are unpersuaded by this argument.

New Jersey courts have repeatedly "held that prosecutorial misconduct can be a ground for reversal where the prosecutor's misconduct was so egregious

that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999) (citing State v. Ramseur, 106 N.J. 123, 322 (1987)). "The standard for reversal based upon prosecutorial misconduct 'requires an evaluation of the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial.'" State v. Rodriguez, 365 N.J. Super. 38, 47 (App. Div. 2003) (quoting State v. Timmendequas, 161 N.J. 515, 575 (1999)).

"Prosecutors may not make inaccurate factual or legal assertions during summation, and they must confine their remarks to evidence revealed during trial, and reasonable inferences to be drawn from the evidence." Id. at 48 (citing State v. Smith, 167 N.J. 158, 178 (2001)). In addition, "prosecutors are not permitted to cast unjustified aspersions on the defense or defense counsel." Id. at 50 (citing Frost, 158 N.J. at 86). "A prosecutor should not, without support in the evidence, accuse defendant of conspiring with defense counsel to conceal or distort the truth." State v. Munoz, 340 N.J. Super. 204, 218 (App. Div. 2001) (citing State v. Sherman, 230 N.J. Super. 10, 19 (App. Div. 1988)). Nevertheless, a prosecutor is permitted to comment on the credibility of a defense witness. Ibid. (citing State v. Robinson, 157 N.J. Super. 118, 120 (App. Div. 1978)).

The prosecutor invited the jury to compare the testimony adduced during the State's case with the testimony provided by defendant's girlfriend. We do not find the prosecutor exceeded fair comment on the evidence. The prosecutor did not make an unfair attack on defense counsel. His comments regarding witness bias and the presence or absence of a motive to lie were permissible. The prosecutor's comments did not deprive defendant of a fair trial.

E.

Last, defendant argues his sentence is improper and excessive. We are unpersuaded by these arguments.

"Our review of a sentence imposed by the trial court is limited to determining whether the court erred in the exercise of its discretionary authority and its finding of the relevant aggravating and mitigating factors in N.J.S.A. 2C:44-1." Tindell, 417 N.J. Super. at 567 (citing State v. Pierce, 188 N.J. 155, 166, 169-70 (2006)). Reviewing courts must determine:

> first, whether the correct sentencing guidelines . . . have been followed; second, whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of the guidelines; and third, whether in applying those guidelines to the relevant facts the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors.

22

[State v. Roth, 95 N.J. 334, 365-66 (1984).]

Accordingly, appellate courts are:

> bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record. Assuming the trial court follows the sentencing guidelines, the one exception to that obligation occurs when a sentence shocks the judicial conscience.
>
> [State v. O'Donnell, 117 N.J. 210, 215-16 (1989) (citations omitted).]

Defendant argues the court erred by applying aggravating factor nine and as to the relative weight it was assigned. We disagree. The record amply supports the trial court's finding of the need for deterring both defendant and the public in general from engaging in the unacceptable, out-of-control conduct displayed by defendant in his fit of road rage.

Defendant also claims the trial court erred by not applying mitigating factor nine (the character and attitude of defendant indicate he is unlikely to reoffend), N.J.S.A. 2C:44-1(b)(9), because he has no prior criminal convictions. We again disagree. The trial court correctly observed that defendant had previously been diverted into PTI on aggravated assault and weapon charges. He had also been previously found guilty of simple assault, N.J.S.A. 2C:12-

23

1(a)(1). That history, coupled with his seemingly uncontrolled anger during the incident involved in this case, supports the trial court's decision not to apply mitigating factor nine.

Finally, defendant argues his sentence is excessive. We discern no abuse of discretion in the trial court's application and weighing of the applicable aggravating and mitigating factors. The sentencing judge properly considered the property damage defendant caused and the threatening, offensive behavior defendant engaged in while possessing a knife. Defendant was found guilty of committing two third-degree offenses. He was sentenced to a three-year probationary term, subject to a 210-day jail term, with all counts running concurrently. Having considered the record and arguments, we are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION