**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5383-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE FIGUEROA,

    Defendant-Appellant.

_____

Argued February 22, 2021 – Decided July 28, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-02-0220.

Candace Caruthers, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Candace Caruthers, of counsel and on the briefs).

Maura K. Tully, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Maura K. Tully, of counsel and on the brief).

PER CURIAM

Defendant Andre Figueroa appeals from his conviction by a jury of three charges arising from a residential burglary in Bradley Beach and his subsequent evasion of a police officer. We affirm.

I.

A grand jury indicted defendant, charging him with: (1) third-degree burglary, N.J.S.A. 2C:18-2(a)(1); (2) third-degree theft of movable property, N.J.S.A. 2C:20-3(a); and (3) fourth-degree obstruction of the administration of law or other governmental function, N.J.S.A. 2C:29-1.

There were two witnesses at trial: Andrew Redmond, a Bradley Beach police officer, and the victim, an elderly man whose home was burglarized while he was sleeping.

Redmond, a five-year veteran of the department, described the municipality as a one-square mile beach town whose winter population is half that of its summer population. He testified that Bradley Beach experiences a rise in residential burglaries during the winter months and that he is generally aware of the houses that are not occupied in the off season.

At approximately 11:30 p.m. on December 5, 2016, Redmond was patrolling in a marked vehicle in an area of the municipality mostly comprised

of summer homes. Because it was December, a Monday night, and late, there was little activity and almost no vehicular or pedestrian traffic in the area.

From his patrol car, Redmond saw a person, later identified as defendant, come out from between two houses. He was wearing dark clothing and a headlamp illuminated with a red light, carrying a bag, and walking his bicycle. Redmond testified that defendant caught his attention because normally no one is in the area of those houses, one of which had previously been burglarized. Redmond knew the residents of one of the houses did not live there year round.

Redmond saw defendant run across the lawn, jump on his bicycle, and pedal away. The officer drove around the block and waited to see if defendant would cross Main Street. He regained sight of defendant riding his bicycle on the sidewalk, which is prohibited by municipal ordinance.

Redmond drove up next to defendant, without activating the patrol car's emergency lights, and directed him to stop by shouting through passenger window of the patrol car. Defendant told Redmond he had no right to stop him. After Redmond explained why he was stopping him, defendant responded, "Fuck you, you have no right to stop me," and continued to ride his bike. Redmond drove alongside defendant and repeatedly asked him to stop; defendant refused to comply. Defendant was wearing a gym bag strapped across

3

his body. Redmond testified that no cars drove by and no one was walking on the streets during the time he was following defendant.

Further down the road, Redmond pulled his patrol car over in an unsuccessful attempt to cut off defendant's path forward. He got out of the patrol car and ordered defendant to stop. Defendant again responded that the officer had no right to stop him. Redmond briefly lost sight of defendant, who quickly cycled to the back of a restaurant parking lot, which was empty and chained because the restaurant was closed. Redmond requested backup and began chasing defendant on foot.

Redmond testified that Bradley Beach Officer Tardio responded and blocked defendant from exiting the parking lot. Redmond tackled defendant to the ground. Once defendant was handcuffed, Redmond found in defendant's possession black gloves, a red light headlamp, hat, belt, lighter, keys, ninety-two dollars in cash, and a black gym bag containing a bottle of gin.

Redmond did not see defendant discard anything or reach into his gym bag while he was following or chasing him. He testified that he was not close enough to defendant in the parking lot to see if he discarded anything. When asked if Tardio was close enough to see if defendant discarded anything, Redmond responded "You'd have to ask him that, if he saw anything."

4

After defendant was transported to police headquarters, Redmond returned to the area where he first saw defendant. He testified that the two houses from between which defendant emerged were close together with no illuminated lights and no cars in the driveways. It appeared to the officer that no one was in either home. Redmond walked toward one of the houses and observed "a cut screen pulled out with the window pushed down and a smudged footprint on the windowsill." Photos of the window and the footprint were admitted as evidence.

Redmond did not know how the screen was cut. He acknowledged that defendant did not have a knife, screwdriver, or razor blade on his person when he was arrested, but testified that the keys in defendant's possession could have been used to cut the screen. The officer, who does not have training in fingerprinting, crime scene investigation techniques, or DNA collection, did not collect a sample of the dirt on the windowsill or check the area for footprints or bike tracks. He testified that a detective on scene conducted the investigation.

Redmond testified that he and two other officers went to the front door of the home and knocked. When no one answered, they discovered that the door was unlocked. The officers entered the home and went to the window with the

A-5383-17

cut screen. Apart from seeing the blinds pushed over, the home did not appear to be disturbed.

The officers went upstairs and found the owners, brothers who were in their nineties, asleep in their bedrooms. Redmond woke the brothers up and explained what happened.

One the brothers testified he lives out of State and owns real estate in Bradley Beach and another shore community. On the day of the burglary, he was collecting rent from his beach properties and decided to stay at the home that was burglarized. He put the cash he collected from his tenants in his wallet, which he then put in his pants. He went to bed after placing his pants on his bedroom dresser.

The victim testified that he was awoken by Redmond, who informed him, "They broken [sic] into your house." He further testified:

> I said, "They broke in? I didn't know." He said, "Yeah, they broke into your house." "How did they break in?" "Through the window," they told me, "downstairs through the window."

He testified that the window had been closed and "[t]here was a portable air-conditioner in that window downstairs. So they pushed out the air conditioner, and that's how they got in." He testified that the front door had been locked.

The victim testified that he told Redmond that a pair of black pants containing his wallet, identification, and over $2000 in cash was missing.

Redmond followed the path defendant took from the victim's house to the restaurant parking lot searching for the missing items. He found the pants on the back side of the restaurant parking lot next to a parked vehicle. The victim's wallet, identification, and $2990 in cash were in the pants. During the search, Redmond did not see anyone walking and no cars drove by.

After the testimony of Redmond and the victim, the State rested. Defendant did not ask the court to instruct the jury pursuant to State v. Clawans, 38 N.J. 162 (1962), that it could draw an adverse inference from the State's failure to call Tardio as a witness. Defendant called no witnesses and chose not to testify.

Defendant subsequently moved for a judgment of acquittal, arguing that the State failed to produce sufficient evidence to establish any of the charges. The court denied the motion, concluding, after a review of each element of the charged offenses, that "there's more than sufficient evidence for these charges to be submitted to the jury."

During deliberations, the jury posed the following question to the court: "Could the defense have called Officer Tardio or any other officers at the scene

7

to testify, or is it only permissible for the prosecution – or only possible for the prosecution?" The court consulted with counsel off the record, and subsequently responded to the jury's question with the following instruction:

> The simple answer to that question is, yes, defense could have called either Officer Tardio or any other witness. But if you remember with regards to the instructions that I gave you, the burden of proving each element of a charge beyond reasonable doubt rests upon the State and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his innocence or to offer any proof relating to his innocence.

Defendant did not object to the court's response to the jury's question. The jury subsequently found defendant guilty of all three counts.[1]

Defendant moved for a new trial, arguing that the court's answer to the jury's question resulted in an "improper Clawans charge" and shifted the burden of proof to defendant. The court denied the motion, concluding the court correctly answered the question and "added that 'the burden never shifts to the defendant,' and that 'defendant has no obligation to prove his innocence.'" Further, the court ensured the jury that "defendant had no obligation to call the

---

[1] The trial court also found defendant guilty of resisting arrest, a disorderly persons offense, N.J.S.A. 2C:29-2(a)(1), and riding a bicycle on a sidewalk, a violation of a municipal ordinance.

A-5383-17

witnesses and the State always has the burden to prove each and every element beyond a reasonable doubt." In addition, the court concluded that

> [a] Clawans charge follows very specific protocols in which the individual who is requesting the charge must do so at the close of his opponent's case. Moreover, requesting counsel must demonstrate the names or classes of available persons not called and the reasons for the conclusion that they have superior knowledge of the facts. In this case[,] defense counsel did not request the charge at the close of his opponent's case, nor did he bring this issue to the [c]ourt's attention after the jury question was answered.

Having granted the State's motion for an extended-term sentence pursuant to N.J.S.A. 2C:44-3 and N.J.S.A. 2C:43-7(a)(4), the court sentenced defendant as follows: (1) for third-degree burglary, an eight-year term of imprisonment with a four-year period of parole ineligibility; (2) for third-degree theft, an eight-year term of imprisonment with a four-year period of parole ineligibility; and (3) for fourth-degree obstruction, an eighteen-month term of imprisonment. The court ordered that all sentences were to run concurrently. The court later amended defendant's sentence for third-degree theft to a four-year term of imprisonment with no period of parole ineligibility to run concurrently with the sentences on the other two convictions. A May 22, 2018 judgment of conviction memorializes defendant's convictions and sentence.

This appeal follows. Defendant raises the following arguments.

9

POINT I

THE COURT SHOULD HAVE ISSUED A CLAWANS CHARGE IN RESPONSE TO THE JURY'S QUESTION. ALTERNATIVELY, THE COURT'S ANSWER IMPROPERLY OMITTED INSTRUCTIONS THAT WERE ESSENTIAL TO PRESERVE DEFENDANT'S RIGHT TO A FAIR TRIAL.

POINT II

REVERSAL IS REQUIRED BECAUSE THE STATE PRESENTED INADMISSIBLE HEARSAY TESTIMONY FROM NON-TESTIFYING THIRD PARTIES TO INCRIMINATE DEFENDANT.

POINT III

THE TRIAL COURT ERRED BY DENYING [DEFENDANT'S] MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR FOURTH-DEGREE OBSTRUCTION.

II.

Because defendant did not request a Clawans instruction or object to the trial court's response to the jury's question, we review the record under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2). "Not any possibility of an unjust result will suffice as plain error, only 'one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it

10

otherwise might not have reached.'"  State v. Coclough, 459 N.J. Super. 45, 51

(App. Div. 2019) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).  Our careful

review of the record reveals no such error.

A Clawans adverse inference charge is appropriate when a party fails to

call a witness at trial, allowing the jury to infer that the witness testimony would

have been unfavorable to that party.  38 N.J. at 170-71.  Before giving a Clawans

adverse inference charge, the court must find:

> (1) that the uncalled witness is peculiarly within the
> control or power of only the one party, or that there is
> a special relationship between the party and the witness
> or the party has superior knowledge of the identity of
> the witness or of the testimony the witness might be
> expected to give; (2) that the witness is available to that
> party both practically and physically; (3) that the
> testimony of the uncalled witness will elucidate
> relevant and critical facts in issue[;] and (4) that such
> testimony appears to be superior to that already utilized
> in respect to the fact to be proven.
>
> [State v. Hill, 199 N.J. 545, 561-62 (2009) (alteration
> in original) (quoting State v. Hickman, 204 N.J. Super.
> 409, 414 (App. Div. 1985)).]

A party requesting a Clawans charge must make it clear to the judge and

opposing counsel "at the close of his opponent's case, of his intent to so request

and demonstrating the names or classes of available persons not called and the

reasons for the conclusion that they have superior knowledge of the facts."

11

Clawans, 38 N.J. at 172. This process allows the opposing party the option of calling the witness or demonstrating to the court the reason for the decision not to do so and the court can then determine whether an adverse inference charge is warranted. Ibid.

As the trial court correctly found, defendant did not request a Clawans charge at the close of the State's case or at the charge conference. The State, therefore, did not have an opportunity to call Tardio, establish a record with respect to the four Clawans factors, or argue that an adverse inference instruction was not justified. Nor did defendant request a Clawans charge in response to the jury's question.[2] The absence of a timely request for a Clawans charge is a sufficient basis to reject defendant's arguments.

In addition, even if a timely request for a Clawans charge had been made, the charge would not have been warranted. We can fairly glean from the record that Tardio was not "peculiarly within the control or power" of the State. Defendant was aware of the officer's identity and could have subpoenaed him as a witness. A witness who is available to both parties but was not called to testify "preclude[s] the raising of an inference against either." Id. at 171.

---

[2] Although the court's conference with counsel prior to issuing its answer to the jury question was not recorded, defendant does not argue that his counsel requested a Clawans charge as a response to the jury's question.

12

In addition, the record contains no evidence that Tardio had superior knowledge of facts that were already the subject of Redmond's testimony. Defendant identifies no evidence that Tardio was close enough to defendant at all times to see if he discarded the victim's pants in the parking lot. Even if Tardio had an uninterrupted view of defendant at all times that he was in the parking lot, the most favorable testimony defendant could expect from Tardio would be that he also did not see defendant discard the pants. There are two alternatives to that testimony: that Tardio saw defendant discard the pants, which would be unhelpful to defendant, and that Tardio saw someone other than defendant discard the pants, which is highly unlikely, given the absence of evidence in the record that any one else was present in the parking lot and because the State would have been required to turn over exculpatory evidence of that type to defendant prior to trial. Tardio's testimony, at best, would have been duplicative of the testimony given by Redmond.

Nor do we agree with defendant's argument that the court's response to the jury's question was plain error. "Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379 (1988). Alleged errors in jury instructions must

13

be viewed in the context of the entire charge and if there is no prejudicial error, the verdict stands. State v. Nero, 195 N.J. 397, 407 (2008).

In its initial jury charge, the court instructed the jury that the State has the burden to prove each element of the charges beyond a reasonable doubt and that the burden never shifts to the defendant. Further, the court instructed the jury that defendant has no obligation to prove his innocence or offer any proof relating to his innocence. In response to the jury's question, the court said defendant could have called Tardio, but that the burden of proof was on the State and that it "never shifts to the defendant." The court's response to the jury did not expressly or impliedly shift the burden of proof to defendant.

We note as well that during closing arguments, defense counsel called attention to the State's failure to call Tardio. Defendant's counsel stated:

> The State didn't produce him to testify . . . . The State never produced him to tell you what he saw. The State never produced him to tell you that he saw him throw the pants . . . . Now there's two officers that are watching Mr. Figueroa, and neither one of them sees him throw anything in the vicinity where the pants are discovered. That's an important fact. That['s] a fact that I want you to ruminate on when making your decision in the jury room. There were multiple officers on scene. The State produced none of them to tell you I saw him throw it, he threw those pants.

A-5383-17

Defendant highlighted for the jury the absence of testimony from Tardio linking him to the discarded pants. The jury's question indicates the jurors contemplated the significance of Tardio not being called as a witness. It is apparent that the jury determined the evidence admitted at trial, even without testimony from Tardio, was sufficient to eliminate reasonable doubt that defendant committed the charged offenses.

III.

Defendant argues that the victim's testimony recounting what Redmond said to him about the manner in which entry was gained to his home was inadmissible hearsay and its admission violated the Confrontation Clause. Because defendant did not object to the victim's testimony at trial, we review the record for plain error.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Hearsay is not admissible unless subject to a specific exception. N.J.R.E. 802.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amends. VI, XIV; N.J. Const. art. I, ¶ 10. This right is

essential to a fair trial and allows defendant the opportunity to exercise their right to confrontation through cross-examination. State v. Garron, 177 N.J. 147, 169 (2003). "When the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." State v. Bankston, 63 N.J. 263, 271 (1973).

Our Supreme Court has acknowledged that "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error . . .; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." State v. Winter, 96 N.J. 640, 646 (1984) (alteration in original) (quoting Bruton v. United States, 391 U.S. 123, 135 (1968)). "[T]o warrant reversal of defendant's conviction, those errors, singly or collectively, must 'raise a reasonable doubt' as to whether they affected the result reached by the jury." State v. Prall, 231 N.J. 567, 588 (2018) (quoting Macon, 57 N.J. at 336). Additionally, "[t]he error must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

We agree that the victim's testimony recounting what Redmond told him about how the burglar entered the home was hearsay, but conclude its admission

was not plain error. The record contains ample evidence other than the victim's testimony of window entry into the home. The court admitted photographs of the ripped screen and footprint. In addition, Redmond, who was subject to cross-examination, testified with regard to the condition of the window and the theory of how the burglar gained entry. See State v. Marshall, 123 N.J. 1, 103 (1991) (finding no prejudice to defendant by admission of hearsay statement the contents of which were repeated in declarant's direct testimony).[3]

Moreover, although defendant disputed at trial whether the burglar entered the home through a window, this factual dispute was not directly related to whether defendant committed the burglary. Defendant challenged the validity of the evidence on the method of entry primarily to suggest that the officers conducted a sloppy investigation. While defendant's proximity to the window at the time he was observed by Redmond tended to link the window-entry evidence to defendant, it was not necessary for the State to prove the method through which defendant entered the home to obtain a conviction. Additionally, the jury heard testimony from Redmond that he discovered the front door to the

---

[3] We are not persuaded by defendant's argument that the victim's testimony included hearsay statements of officers other than Redmond. While the victim used both "he" and "they" when describing who told him about the burglary, Redmond testified he was the only officer who spoke with the victim.

home unlocked. While the victim testified that the door was locked when he went to bed, the jury could have accepted Redmond's testimony as proof of the burglar's method of entry into, or exit from, the home.[4]

We conclude that defendant's reliance on State v. Branch, 182 N.J. 338 (2005), is misplaced. In Branch, a detective testified that a defendant's photograph was included in a photo array "based on information received." Id. at 347. He did not explain how the information was received or its source. Ibid. The Court held admission of the hearsay testimony violated the Confrontation Clause because the "detective implied that he had information from an out-of-court source, known only to him, implicating defendant in the burglary." Id. at 353. The testimony at issue here was from the victim, not an investigating officer, identifies the source of the out-of-court statement, who was subject to cross-examination, and does not directly implicate defendant.

IV.

We review a denial of a motion for a judgment of acquittal de novo. State v. Williams, 218 N.J. 576, 594 (2014); State v. Brown, 463 N.J. Super. 33, 224

_____

[4] We reject defendant's argument that the victim's testimony regarding the portable air conditioner in the window was hearsay. On that point, the victim was testifying based on his personal knowledge of the conditions of his home.

(App. Div. 2020).  The motion pursuant to <u>Rule</u> 3:18-1 will be denied "if 'viewing [only] the State's evidence in its entirety, be that evidence direct or circumstantial,' and giving the State the benefit of all reasonable inferences, 'a reasonable jury could find guilt . . . beyond a reasonable doubt.'"  <u>State v. Sugar</u>, 240 N.J. Super. 148, 152 (App. Div. 1990) (alteration in original) (quoting <u>State v. Reyes</u>, 50 N.J. 454, 458-59 (1967)).

Defendant appeals only the denial of his motion for acquittal on the fourth-degree obstruction charge.  N.J.S.A. 2C:29-1(a) provides that:

> [a] person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently lawful act.

This is a "crime of the fourth degree if the actor obstructs the detection or investigation of a crime or the prosecution of a person for a crime, otherwise it is a disorderly person's offense."  N.J.S.A. 2C:29-1(b).  A defendant must act purposely.  N.J.S.A. 2C:29-1.  "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result."  N.J.S.A. 2C:2-2(b)(1).

Defendant argues that when Redmond directed him to stop Redmond was aware only of the sidewalk ordinance violation, which was not a crime. He argues, therefore, that the jury could not have concluded that defendant obstructed the investigation of a crime, a fourth-degree offense. However, it is defendant's state of mind, not Redmond's, that is an element of the crime.

In addition, verdict sheet instructed jurors not only to determine whether defendant was guilty of committing the crime of obstructing the administration of law or other governmental function, but also that:

> If you find the defendant guilty of the crime of Obstructing the Administration of Law or Other Governmental Function, you must go on to consider whether the [d]efendant obstructed the identification, detection, or prosecution of himself for the crime of either (a) Burglary; (b) Theft; (c) Riding a bicycle on the sidewalk; [or] (d) Burglary, theft, and riding a bicycle on the sidewalk.

The verdict sheet indicates that the jury found defendant obstructed the identification, detection, or prosecution of himself for the crime of theft. He was, therefore, properly convicted of a fourth-degree offense. The verdict sheet reflects the jury's conclusion that defendant committed theft, was aware that he committed theft, and purposely refused Redmond's orders to stop to obstruct the identification, detection, or prosecution of his crime.

20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5383-17