**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5412-15T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL J. WEST,

      Defendant-Appellant.

_____

Argued March 20, 2019 – Decided January 3, 2020

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. 2016-015.

Roy Allan Epstein argued the cause for appellant.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Michael J. West appeals from the order of the Law Division, Criminal Part, finding him guilty of the petty disorderly person's offense of harassment under N.J.S.A. 2C:33-4(a). Defendant argues the State did not present sufficient evidence to prove, beyond a reasonable doubt, that the content of the note defendant placed on a fence demonstrated an intent to harass the public official identified therein. We agree with defendant and reverse.

I

On September 25, 2015, Detective Sergeant Thomas O'Keefe, of the Secaucus Police Department, filed a warrant/complaint charging defendant with third degree terroristic threats under N.J.S.A. 2C:12-3b, against Michael Gonnelli, the Mayor of Secaucus. The complaint alleged defendant placed a "sign" on a locked fence on the end of Farm Road, which read: "the mayor is out of control with his draconian rules & somebody must cap his ass."[1] The

---

[1] The Supreme Court has made clear that: "Canon 2 [of the Code of Judicial Conduct] directs judges to 'avoid impropriety and the appearance of impropriety in all activities.' The Canon adds that judges 'should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.'" In re Reddin, 221 N.J. 221, 227 (2015). Here, the warrant/complaint issued against defendant reflects that the Secaucus municipal court judge

(continued)

A-5412-15T3

prosecutor downgraded the charge against defendant to harassment, a petty disorderly person's offense under N.J.S.A. 2C:33-4(a). In an order dated July 25, 2015, the Hudson County Assignment Judge transferred venue of the case to the Essex County vicinage "for disposition by a Superior Court Judge to be designated by the Assignment Judge."

Defendant was tried before the Presiding Judge of the Municipal Courts of Essex County. Defendant was represented by a staff attorney of the Office of the Public Defender. Before the start of the trial, the attorneys stipulated to the admission of four exhibits into evidence: (1) a DVD surveillance video of the incident; (2) an audio recording of defendant's statement to Sergeant O'Keefe; (3) a transcript of defendant's statement; and (4) a copy of the note defendant allegedly wrote and placed on a gate.

The State called Mayor Gonnelli as its only witness. He testified that at approximately ten o'clock in the morning on September 20, 2014: "I was advised by a public works [employee][2] that there was something posted about me on a

---

telephonically swore in Detective O'Keefe and made a finding of probable cause based on his testimony. Because the complaint/warrant identified the Mayor of Secaucus as the victim, the municipal court judge should have recused herself.

[2] The trial transcript states: "a public works employer." We assume this was a typographical error.

fence in the second ward of our town." The Mayor characterized this area as "a residential area in our community." The prosecutor did not ask the Mayor if the public works employee told him the content of the note. Instead, the prosecutor asked:

> Q. And after receiving that information, what did you end up doing next?
>
> A. I actually got in my car, I rode over and retrieved this note that was put on the fence pertaining to me.
>
> Q. And where . . . exactly was the note on the fence, like how . . . was it positioned?
>
> A. It was kind of just hung in the center of a . . . fence that had been open for a long period of time that was recently closed. And it was kind of posted right on the center of the fence.

The Mayor took the note and brought it back to his home but, at that time, he did not "realize what the note meant." His wife was equally mystified. However, when he showed the note to his daughter, she "immediately told [him] what it meant." In response to the prosecutor's request, the Mayor read the note out loud for the record: "The Mayor is out of control with the Draconian rules and somebody must cap his ass." When the prosecutor attempted to ascertain what the witness learned the phrase "somebody must cap his ass" meant, defense

counsel objected. The municipal court judge implicitly sustained by stating: "his daughter told him what it meant."

Despite the absence of a factual foundation at this juncture, the Mayor testified that "once I learned what it meant I notified our police department, who came and picked it up." The prosecutor thereafter returned to the content of the note:

> Q. - - what did you find out to learn the word cap meant?
>
> A. That someone was going to shoot me either in my ass or in my back.
>
> Q. And how did that make you feel?
>
> A. That made [me] feel a little bit uncomfortable. It made my family feel a lot more uncomfortable.

Defendant testified in his own defense. His attorney asked him: "What was the purpose? Why did you . . . put . . . that note there?" The record shows defendant's response consisted of a rambling, nonsensical diatribe in which he alleged to "being watched by two detectives" that were "standing by a rock." Defendant claimed this surreptitious surveillance occurred at another "event." He observed "a black undercover car sped through the dirt road and I wrote down its license plate number. And it . . . changed its driving . . . first it was driving through the dirt road, and then back again."

5

At one point, the municipal court judge interrupted defendant's testimony in an attempt to return to the issue at hand.

> THE MUNICIPAL COURT: [W]hat you're telling the [c]ourt is that you were concerned because the police were following you or observing you is that right?
>
> DEFENDANT: They were – they were speeding through the field of – of –
>
> THE COURT: Okay.
>
> DEFENDANT: - - the field that was connected to the nature area.
>
> DEFENSE COUNSEL: What was your objection - -
>
>    . . . .
>
> - - why you wrote this note? [sic]
>
> DEFENDANT: it was an accumulative -- I will -- I will explain it. I really will have a legitimate explanation here, I promise, all right?
>
> DEFENSE COUNSEL: Okay. How much longer will this take?
>
> DEFENDANT: The next event that happened was me and my friend, [L.K.],[3] were being watched by a third - - on the third day by a cop who was parked at Acorn Road. And then within a couple of more days, sometime around September 20th or before, my tree was cut down, and - -

---

[3] Although defendant identified this person by name, we use initials to protect this person's privacy.

A-5412-15T3

DEFENSE COUNSEL: Your tree?

Defendant continued this stream of consciousness with irrational testimony for several transcription pages until the municipal court judge intervened with the following questions:

> THE MUNICIPAL COURT: So [do] you think that the Town or the police or the public officials were targeting you for some reason?
>
> DEFENDANT: They were not targeting me specifically but, I mean, cutting down a tree is not targeting me, but –
>
>     . . . .
>
> THE MUNICIPAL COURT: -- you think that they were wrong for cutting your tree down?
>
> DEFENDANT: Yes, Your Honor.  And – and –

Defendant claimed to have written notes to help him remember all of the incidents of retaliation by the municipality.  Defendant testified that the fence, which he used to post the note at issue in this case, was on "private property for approximately 70 years."  Defendant eventually testified he placed the note on the fence: "Because . . . [t]he fence was locked in a bizarre way."  Defense counsel followed up with the following questions:

> DEFENSE COUNSEL: So, you didn't like the fact that it was chained?

DEFENDANT: I -- I didn't react to it when it was locked. I reacted to it when the . . . people outside were reacting to it.

DEFENSE COUNSEL: Okay. And why did you put this note there?

DEFENDANT: Because when I was at -- when I was using my cell phone downloading movies from -- from -- because I would -- I get five signal bars at the window. So, I'm there at the window and I'm seeing the people outside reacting to it, and then I go outside and they're walking away depressed. And in my mind, late at night I'm home alone, thinking about all of the things that happened the past two weeks, and I just think about how bizarre it is and then I just, at the spur of the moment, grabbed a marker and I wrote. And then I decided to put it up because . . . there were already people there, and I figured if the people saw it they would react more to it. They were already reacting to it . . . without me.

After hearing closing arguments from counsel and considering the evidence presented, the municipal court judge considered the elements of harassment under N.J.S.A. 2C:33-4(a) and concluded defendant "had every right to express his concerns to public officials. He had every right to refer to Draconian rules, too much controls, and otherwise." However, the municipal court judge found defendant "did not have the right to make a threatening remark. In common parlance the phrase, somebody must cap his ass, is a threatening remark within the meaning of the harassment statute." The

8

municipal court judge enjoined defendant from having any contacts "with the victim in this matter, written or otherwise." He imposed the mandatory statutory penalties and costs, which amounted to $158, but suspended the $33 court cost, reducing the amount defendant must pay to $125, and allowed defendant one year to pay this sum.

## II

Pursuant to the procedural process codified in Rule 3:23-1 to -9, defendant appealed and sought a trial de novo before the Law Division, based on the record developed in the municipal court. The matter came for oral argument before the Law Division, Criminal Part in Essex County on June 27, 2016, with defendant represented by different counsel. The defense argued that defendant was not guilty as a matter of law because he did not communicate with or send a communication to the Mayor of the Town of Secaucus by merely leaving "a somewhat inartful note on the public property." Alternatively, defense counsel argued that defendant did not: (1) conceal his identity as the author of the note; (2) interact with the Mayor at an inconvenient hour; (3) use coarse language; or (4) engage in any other manner that was likely to cause annoyance or harm to anyone.

A-5412-15T3

Before the prosecutor addressed the Law Division judge on behalf of the State, the judge addressed defendant directly, although he was represented by counsel, and engaged in the following exchange:

> THE COURT: All right. Mr. West, you want to address the [c]ourt with something, sir?
>
> . . . .
>
> Okay. Stand up, please.
>
> (Pause in dialog)
>
> DEFENDANT: Judge, the Municipal Judge who arrested me in 2015 had been my -- ex-municipal prosecutor, and there's a document -- the Municipal presiding judge of Hudson County that says in 2013, [the judge] was ordered to stay off my cases. And in 2015, she did not.
>
> And -- the -- ineffective counsel indications can be found on page 55 and page 56. And I –
>
> THE COURT: Mr. West, this matter was tried before [the municipal court judge assigned by the Essex County Assignment Judge], not the judge you are referring to in -- right now. This was tried actually here, in this building, before [the Essex County municipal court judge]. It was transferred out of Hudson County because, I'm sure, of a conflict in light of the fact that the Mayor of the town was the named complainant in that case.
>
> . . . .

DEFENDANT: [I]t's also because my family worked for the Hudson County Superior Court.

. . . .

THE COURT: Okay. So that's probably why that it was transferred here. There's a few reasons. All right. Anything else you have to say, sir?

DEFENDANT: I really, really, really didn't know what I was doing when I wrote "Cap" (phonetic). I'm really sorry that I wrote it. I did not know any slang meanings. I have been taught by great teachers since I was a child. I do not use slang at any time, ever. And I'm really sorry.

At this juncture, we are compelled to point out that a de novo review by the Law Division is strictly governed by the procedures described in Rule 3:23-8(a)(2), which provides:

> The court to which the appeal has been taken may reverse and remand for a new trial or may conduct a trial de novo on the record below. The court shall provide the municipal court and the parties with reasons for a reversal and remand. If the court to which the appeal is taken decides the matter de novo on the record, the court may permit the record to be supplemented for the limited purpose of correcting a legal error in the proceedings below.
>
> [(Emphasis added).]

This impromptu decision by the Law Division judge to seek defendant's point of view on the substance of the charges against him in this trial is not only

unauthorized by the Rules governing the scope of these proceedings, it resulted in a breakdown in the decorum expected in a judicial proceeding. We are equally vexed by defense counsel's failure to object to this violation of defendant's right to a fair trial under the limitations imposed by Rule 3:23-8(a)(2). After all, the scope of the Law Division's review of municipal appeals is well-settled.

The Law Division judge must give "due, although not necessarily controlling, regard to the opportunity of the" municipal court judge to assess "the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157 (1964). The State must demonstrate that the record developed before the municipal court established the elements of harassment as defined in N.J.S.A. 2C:33-4(a), beyond a reasonable doubt. As an intermediate appellate court, we review to determine whether there is "'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting Johnson, 42 N.J. at 162).

After summarizing the elements of harassment in N.J.S.A. 2C:33-4(a), the Law Division judge did not conduct a de novo review of the record developed before the municipal court. Instead, he appeared to view his role as one of an appellate tribunal. The following comments illustrate this point:

THE COURT: Let the record reflect that I have asked the Officers to remove Mr. West from the courtroom because, as I'm giving my ruling, he is continually disrupting the [c]ourt and interrupting me.[4] And it appears that Mr. West insists on going off on a tangent in this matter, on things that are wholly irrelevant here.

The facts of the case here are very simple. He obviously was upset with whatever the Mayor of Secaucus was doing. He posted a sign in a public area that read, and I'll read it again, "The Mayor is out of control with his draconian rules and somebody must cap his ass."

The Mayor was alerted to the presence of that sign by another, I think, Public Works official or employee of the town. The Mayor saw the sign, he notified the police, the police investigated and that investigation led to Mr. West.

Mr. West had a trial before [the municipal court judge], and he readily admitted there that he wrote the sign. His insistence is I didn't know what "cap his ass" meant. Quite frankly, I think that the Judge below, [the municipal court judge], had a full record. And in that record he found that Mr. West was guilty of the offense of harassment as charged.

I don't find anything in that record that leads to an error in [the municipal court judge's] judgment. I do believe, based on his conduct, based on what he wrote and I, quite frankly, I find it almost incredible to believe that a man of his age and supposed intelligence does not

---

[4] While the Law Division judge was summarizing the factual record developed before the municipal court, defendant interrupted the judge with a series of nonsensical comments claiming that the Mayor surreptitiously directed "people" to cut down his tree.

know what the meaning of the word "cap his ass" is. Because certainly, in this area in New Jersey, I don't think we can find too many people who don't understand what the meaning is.

He continues to tell me that he's intelligent; he was educated by the best teachers. Well, first of all, I don't think teachers are teaching you in school about "capping your ass." But certainly here, he knows -- I think he knows what that meant. That's my opinion.

I believe the record below is complete. I believe the Judge made no error in judgment. I will affirm the Court below on this hearing. Counsel, thank you.

[(Emphasis added).]

Against this record, defendant raises the following arguments on appeal.

POINT I

UNDER N.J.S.A. 2C:33-4, THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THE PREREQUISITE OF "WITH THE PURPOSE TO HARASS ANOTHER" AS IS NECESSARY FOR THE CONVICTION OF THE DEFENDANT.

POINT II

CONTEMPORANEOUS WITH THE COMMUNICATION, THE INVESTIGATIVE OFFICER INQUIRED OF DEFENDANT AS TO HIS "PURPOSE" REVEALING NO PURPOSE TO HARASS.

14

POINT III

IN HIS ARGUMENT TO THE TRIAL COURT, THE PROSECUTOR GAVE SHORT SHRIFT TO THE REQUIRED, YET CRUCIAL, STATUTORY ELEMENT OF HARASSMENT "PURPOSE", BECAUSE HE KNEW HE COULD NOT OTHERWISE MEET THE STATE'S BURDEN.

POINT IV

THE CORROBORATING EVIDENCE AS FOUND BY THE TRIAL COURT IS THAT DEFENDANT'S PURPOSE WAS NOT TO HARASS THE MAYOR.

POINT V

ON APPEAL, THE COURT'S SINGULAR FOCUS ON THE WORDS "CAP HIS ASS" WAS MISPLACED.

We conclude the record developed before the Law Division shows the judge did not adhere to the standard codified in <u>Rule</u> 3:23-8(a)(2). From beginning to end, the judge appeared to be unfamiliar with the legal principles governing municipal appeals. The judge's impromptu interactions with defendant in open court were also incompatible with principles of judicial decorum and unmindful of how they might affect defendant's constitutional right to a fair trial.

A-5412-15T3

We also conclude the State did not satisfy its burden of proof, beyond a reasonable doubt, that defendant committed the petty disorderly person's offense of harassment under N.J.S.A. 2C:33-4(a).

> A violation of subsection (a) requires the following elements: (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.
>
> The purpose to be served by enactment of the harassment statute is to make criminal, private annoyances that are not entitled to constitutional protection. Thus, the substantive criminal offense proscribed by subsection (a) "is directed at the purpose behind and motivation for" making or causing the communication to be made.
>
> [State v. Hoffman, 149 N.J. 564, 576 (1997) (internal citation omitted).]

The Mayor was the State's only witness. The Department of Public Works employee who discovered the note and brought it to the Mayor's attention did not testify. The note stated: "the mayor is out of control with the draconian rules & somebody must cap his ass." Both the Mayor and defendant testified that they did not know what the phrase "cap his ass" meant. The Mayor testified that his daughter told him what the phrase meant to her. The State did not produce any

16

competent authority of the meaning of the phrase. It is undisputed that the note was posted at a place unlikely to be discovered by the Mayor. Based on the testimony of the only two witnesses, the meaning of the phrase "cap his ass" remains unsettled.

The record before the Law Division judge is devoid of competent evidence concerning the meaning of the phrase. Moreover, the judge's assumption that its meaning was commonly understood "in this area of New Jersey" ignored the testimony of the witnesses that they did not understand its meaning. The highlighted sections of the Law Division judge's final words show, beyond any doubt, that he did not conduct the de novo review of the record developed before the municipal court, which the Supreme Court made clear is required in Johnson, 42 N.J. at 157 and in Rule 3:23-8(a)(2).

The record also shows that the State did not present any legally competent evidence before the judge from which an inference of guilt can logically and legitimately be drawn. See R. 3:18-1. Stated differently, "based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony," we are satisfied that based on the record before us, no reasonable fact-finder could find

17

defendant guilty of harassment beyond a reasonable doubt.  <u>State v. Williams</u>, 218 N.J. 576, 594 (2014) (citing <u>State v. Reyes</u>, 50 N.J. 454, 458-59 (1967)).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-5412-15T3